| 41 721 |
| 48 542 |

ORRIN R. CAIN, APPELLANT, V. MINNIE D. BOLLER ET AL., APPELLEES.

FILED SEPTEMBER 18, 1894.    NO. 5386.

Estoppel.    Where one, by his words or conduct, willfully causes another to believe in the existence of a certain state of facts, and induces him to act on that belief or to alter his previous condition, the former is concluded from averring against the latter a different state of things as existing at the same time.

APPEAL from the district court of Douglas county. Heard below before ESTELLE, J.

*B. G. Burbank,* for appellant.

*Cowin & McHugh,* contra.

RYAN, C.

The contention on this appeal is between Orrin R. Cain, as appellant, and Minnie D. Boller and C. E. Boller, as appellees, as to the correctness of the findings of the district court of Douglas county in favor of the parties last named.    On April 30, 1890, one A. R. McCandless was the owner of a lot and a half lot in Isabel's addition to the city of Onaha, which, in a writing of that date, he agreed to sell to Burton A. Karr, who agreed to purchase the same upon the terms in said writing provided; that is to say, Karr was to build a certain dwelling house thereon, and pay one-third of the purchase price in lumber and the other two-thirds out of a loan which he expected to effect, secured by a mortgage on the premises to be conveyed to him.    About the 28th day of May, 1890, Karr contracted in writing with appellant for the erection by Cain of the dwelling house, to be built on the property which Mc-Candless had agreed to convey to Karr.    For building this house Cain was to receive from Karr the actual cost of

50

the necessary labor and material, with ten per cent in addition thereto. On June 11, 1890, Karr entered into a written contract with C. E. Boller for the sale by Karr to Boller of the property on which Cain, the appellant, was then erecting a building for Karr. As between Karr and Boller, the agreed price for the house, when completed, and the lots was $2,800, of which $900 was to be paid in Boller's architectural work, $300 in a second mortgage, and the $1,600, not otherwise provided for, by a first mortgage on the house and lots. The erection of the house proceeded under the contract between appellant and Karr until July 18, 1890, when Karr surrendered his contract for the purchase of the lots to McCandless, by whom, at Karr's request, another like contract relating to the same subject-matter was made with appellant Cain. On the same day, and as part of the same transaction, appellant transferred all his title, right, and interest in the lots mentioned. This assignment by Cain to Karr recited that the said Cain had received the said contract and made the same with McCandless at the request of said Karr, and that said Karr had furnished all the money therefor, and that said Cain had made said contract for the use and benefit of Karr and had paid nothing therefor. This arrangement and assignment were made because just previously thereto an attachment had been levied upon some lumber designed for use in the erection of Karr's building. Neither McCandless nor Boller had any knowledge of the assignment from Cain to Karr. Indeed, its existence was concealed from every one not a party to it, so that no process should be levied upon property improved or being used for that purpose, in satisfaction of claims against Karr. That both McCandless and Boller had knowledge of the transfer to Cain, and dealt with him as the only party concerned, except themselves, must be accepted as established by the findings of the trial court upon conflicting evidence. When the time came for McCandless to convey, it was suggested that the title be vested in

the wife of C. E. Boller for convenience in effecting a loan; and the deed was made accordingly.   With a view to satisfying the company which was making the loan just referred to, and before said deed was made, Mr. Karr and his wife executed a writing which recited that all moneys which would have been payable to Karr from Boller, under the contract between Karr and Boller, should be paid to appellant Cain.   Of the $1,500 net obtained by this loan, Boller handed $800 to appellant Cain as the first payment due on the contract for purchase.   Out of this $800 Cain made payment to McCandless of the balance, of $695, still owing him.   Boller at different times paid Cain sums aggregating $327.50 at Cain's request.   ·Cain applied to Boller for a payment of $300 additional under the contract, in which, by Cain's own representations, Boller had been led to suppose Cain had been substituted in place of Karr.   When Cain asked for this, the last cash payment required, Mr. Boller demanded that there should be delivered to him waivers of all claims for liens.   Cain answered that as the laborers were at work he would not be able to obtain their waivers, but that as to the lumber and mill work he would furnish the waivers, and accordingly procured and delivered to Boller a written waiver of liens on the property signed by the Bohn Sash & Door Company, which furnished the mill work, and the Star Union Company, which had furnished the lumber.   By the contract of Boller he was entitled to a waiver of liens before he made this payment, and in reliance upon these waivers he was induced to make payment to Cain, in whose petition a foreclosure was sought in part for the whole amount as to which these liens were waived.   The monstrous nature of this claim becomes evident when it is noted that the whole amount of the items for labor done and material furnished aggregate but $2,068.30, for which appellant's lien was claimed, on which claim filed there was credited a payment in cash of $758.40, leaving a balance of but

$1,309.90, of which the sum total of the two liens waived was $950. When appellant secretly assigned and transferred to Karr all his right, title, and interest in and to the lots now sought to be charged with a mechanic's lien, it is very doubtful, to say the least, whether under the circumstances of this case, independently of every other consideration, he did not part with all existing right to enforce a mechanic's lien against the lots in question. The district court properly held that added to this consideration it could not be tolerated that Cain should, as owner, procure payments to himself to be made on the faith of deceitful appearances of which he was the guilty author, and afterwards assert, as against the party who had acted on the faith of such appearances, a state of facts inconsistent therewith to the detriment of such other party. The judgment of the district court is

AFFIRMED.

IRVINE, C., not sitting.