CARRIE HAGELIN, APPELLEE, V. COMMONWEALTH LIFE INSURANCE COMPANY, APPELLANT.

FILED MAY 16, 1921. No. 21524.

Insurance: FORFEITURE. Where there is no specific provision in a policy of life insurance for forfeiture, either whole or partial, on a breach of a condition by the assured, the court will not write one in; nor can the insurer afterwards impose new conditions creating a forfeiture without the consent of the assured, and without a new consideration.

APPEAL from the district court for Lancaster county: ELLIOTT J. CLEMENTS, JUDGE. *Affirmed.*

*Fawcett & Mockett,* for appellant.

*Stewart, Perry & Stewart, contra.*

LETTON, J.

Paul A. Hagelin, the assured, was a son of plaintiff, the beneficiary named in a life insurance policy issued to him by defendant. He died November 2, 1918, from a wound received in battle in the World war. The defendant admits the issuance of the policy, but denies that the assured at all times fully complied with its conditions. It pleads that one of the provisions of the policy is: "This policy is unrestricted as to travel, residence or occupation of the insured. In case of death of the insured by selfdestruction, sane or insane, within one year from date of issue, a sum equal to the premiums actually paid hereon, and no more, shall be paid, but if at any time he engage in military or naval service in time of war (the militia not in active service excepted), he shall secure the company's written consent and pay the extra premium therefor." And it alleges that the assured, without receiving the company's written consent, went beyond seas, and, while engaged in military service, was killed, and that this forfeited the policy except as to the return of premiums paid. The answer also pleads some matters of evidence which will be mentioned hereafter. Liability is denied on account of the failure to procure the written consent of

the company and failing to pay the extra premium. The reply is a general denial, with affirmative defenses not necessary to set forth, as the case is not controlled by them.

When the assured was drafted he wrote the following letter to defendant:

"April 25th, 1918.

"Commonwealth Life Insurance Co., Omaha, Nebr.

"Gentlemen: I am now drafted into the service of the U. S. starting April 26, 1918. Will you kindly advise me at your early convenience whether my insurance will hold good in view of the present emergency. Will it be possible to collect the full amount of the policy in case of a casualty during the term of military service either in this country or abroad. Or does the policy merely lapse with an option of taking it up again after the war is over. Please advise me fully as I am anxious to know before I make any further payments on the premiums soon coming due. I am, very truly yours,

"Paul A. Hagelin."

Defendant answered:

"April 27th, 1918.

"Mr. Paul Hagelin, Box 122, Wahoo, Nebraska.

"Dear Sir: In reply to your letter of the 25th, wish to state that all of our policies carry a war clause and the policy holder has a choice of two options. If you wish the face of your policy to be paid to the beneficiary, should you die or be killed while in service, it will be necessary for you to request a permit from the company and pay an extra premium, which at the present time is $37.50 per $1,000.

"However, as you undoubtedly know, the government is paying insurance on all of the soldiers and sailors, and we have advised all of our policy-holders to take as much government insurance as possible and pay the regular premium on their policies. Should they then die or be killed while in service, the surrender value of the policy will be returned. In keeping the policy in force this way,

should you return crippled, sick, or in such condition that you could not again pass the physical examination, you will have an old line policy, as we do not require re-examination.

"If there are any other questions that you would like to ask in regard to your policy, we will be pleased to again hear from you. Yours very truly,

"J. E. Euhling, Secretary."

Defendant received no answer to this letter. The premium due in June was paid by a brother of the assured. In October defendant received the following letter from Eleanor Hagelin, a sister of the assured:

"October 10, 1918

"Commonwealth Life Ins. Co., Omaha, Nebraska.

"Dear Sir:     Please notify me hereafter, when my brother's policy, Paul A. Hagelin, Touhy, Nebr., policy No. 445, is due and how much and how good the policy is after he has gone to war and how much more, if any, you have to pay to collect the face value. I am going to try to keep up his policy until he returns. Please write me all the particulars. Respectfully yours,

"Eleanor Hagelin, 1644 O Street, Lincoln, Nebr."

Defendant replied as follows:

"Oct. 14, 1918.

"Eleanor Hagelin, 1644 O Street, Lincoln, Nebraska.

"Dear Madam: I have your letter of the 10th inst., and note what you have to say in regard to your brother's policy, and that you desire to pay the premium. I would suggest that you just pay the regular premium on this policy, and should your brother die or be killed while in the service, all premiums paid the company would be returned to the beneficiary. Should he return sick, crippled or in such condition that he could never again pass the physical examination, he would still have an old line policy for we do not require a re-examination when he returned from the service. We will make note that the notices will be sent you and I trust that you will advise your brother to take as much government insurance as he

can take.   Yours very truly,

                    "J. E. Euhling, Secretary."

Miss Hagelin, on November 12, paid $16.88, the quarterly instalment of the premium for the current year. Assured was wounded, and died in November, 1918, but his relatives had no definite knowledge of this until in January, 1919. Soon after defendant was informed of the fact, but refused to pay more than the amount of premiums received, amounting to $512.78, which sum it now offers to pay.

Defendant introduced in evidence portions of several letters from the assured to his sister complaining that the defendant raised the rates of insurance because he was in the service, and indicating that he would be unable to keep up the premiums on that account, but these cannot affect the contract between the assured and defendant.

In addition to the provision quoted in the answer and above set forth, the policy contained the following provision: "This policy is incontestable after one year from date of issue, except for the nonpayment of premiums, or violation of the terms of this policy as to military or naval services in time of war." The appellant pleads and insists that engaging in such service in time of war "ipso facto worked a forfeiture of said policy or contract of insurance and relieved the defendant from any and all liability under said policy thereafter, for death of said Paul A. Hagelin while so engaged in said military service." This is a mere conclusion, and is not based upon anything in the policy. There is no provision therein that, in the event the insured engages in military or naval service in time of war and fails to secure the written consent of the company and pay an extra premium, the contract shall be void, or the insurance forfeited, or that the company will return only the premium paid. Neither is there any provision that a violation of its terms in this respect will constitute a defense to an action thereon, or that the defendant does not assume such a liability. The only forfeiture provision we find is as follows: "If any premium

is not paid when due this policy shall be *ipso facto* null and void, and all premiums forfeited to the company, except as herein provided." This does not cover the proposed partial forfeiture.

The contention is made that, since the assured was informed of the construction placed upon the policy by the company and thereafter the premiums were paid for him, such construction was ratified and adopted by him, and that the construction placed upon the contract by the parties will control in its interpretation by the court. The mere fact that the premiums were paid in accordance with the terms of the policy, after this construction was communicated to the assured, does not establish consent to this construction by him. He was at liberty to pay the premiums as they fell due and abide by his own idea as to the meaning of the contract, or by the construction that a court might place upon it. Furthermore, in this case the policy was written in 1911, and contains the contract made, and the insurance company had no power seven years afterwards to inject conditions or qualifications into it, unless these conditions were assented to by the assured, and the burden is upon it to establish this. Doubtless a new contract might have been made, but none was ever made so far as shown by the record.

There is no provision in the policy specifying the amount of additional premium to be paid for war risks, and the assured never agreed to pay any specific amount therefor, or to comply with any rule establishing a rate for such insurance. Where there is no specific provision in a policy for forfeiture, either whole or partial, on the breach of a condition, the court will not write one in, nor can the insurer do so without the consent of the insured and without a new consideration.

The cases cited by defendant do not apply to the provisions of such a policy as this.

                                        AFFIRMED.