MINNIE E. RHOADS, APPELLANT, V. COLUMBIA FIRE UNDERWRITERS AGENCY ET AL., APPELLEES.

FILED APRIL 11, 1935. No. 29140.

*Frank M. Johnson* and *Craft, Edgerton & Fraizer,* for appellant.

*Wells, Martin, Lane & Offutt, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

EBERLY, J.

This is a civil action for the recovery of money only, brought by the plaintiff against the defendants, who are engaged in the fire insurance business in the community in which plaintiff resides.

The allegations of plaintiff's petition may be summarized as being substantially as follows: That on July 18, 1930, plaintiff applied for, and received, a fire insurance policy insuring her farm buildings and the contents

thereof, situate on her farm in Dawson county, Nebraska, in the sum of $5,600, $3,000 of which was on the farm residence; that by agreement of the parties a mortgage clause was to be attached to said policy in favor of Trevett, Mattis & Baker Company of Beatrice, Nebraska; that the plaintiff paid the premium thereon, and the policy No. 548511 was duly issued as applied for, including the mortgage clause attached, and was transmitted direct to Trevett, Mattis & Baker Company, the mortgagee; that in said transaction the defendants were represented by one John C. Haley, as their agent, and that said "John C. Haley on September 30, 1930, and on July 18, 1930, and for a long time prior and subsequent thereto was the duly authorized agent of the defendants in their fire insurance business, consisting of securing applications, collecting premiums, mailing applications to Omaha office, delivering policies, making adjustments, and generally representing the defendants in and about Dawson county, Nebraska;" that on September 30, 1930, new improvements having been completed on plaintiff's residence and barn (covered by policy No. 548511), John C. Haley, as defendants' agent, came to plaintiff's premises, solicited and obtained an application in writing, upon the blanks furnished by defendants, signed by plaintiff, for additional insurance on the property previously insured, for a five-year period, in the sum of $900 on the residence, and $1,000 on the barn, this also to have a mortgage clause attached with loss payable to Trevett, Mattis & Baker Company, mortgagee, of Beatrice, Nebraska, and also at said time collected and received the premium due therefor, in the sum of $50.35, which the defendants have ever since retained; that plaintiff was orally assured by said Haley, during said transaction and as a part thereof, that "the insurance would be in force at 12:00 o'clock noon on the day following," and that the policy to be issued "would be transmitted direct to Trevett, Mattis & Baker Company, the mortgagee, and would bear a mortgage rider assigning to said mortgagee the plaintiff's interest in said insurance;" that plaintiff fully relied

upon the promises and agreements set forth, including the retention by defendants of the premium paid by her, and believed that the policy applied for had been duly issued by defendants, transmitted to, and was then in possession of, Trevett, Mattis & Baker Company as contemplated by her engagements with defendants; that plaintiff could and would have purchased the additional insurance from some other company had she not relied upon the acts and representations of defendants, made by John C. Haley as their agent; that by reason thereof the defendants and each of them "are now estopped from denying liability for any loss plaintiff has sustained in connection with the application taken on September 30, 1930, and the contract of insurance to be issued pursuant thereto," and furthermore thereafter in said pleading plaintiff refers to and bases her right of recovery from said defendants upon and by virtue of said contract of additional insurance; that on October 5, 1932, plaintiff's residence, the subject of the insurance contracts aforesaid, then of a value of not less than $5,000, was totally destroyed by an accidental fire; that plaintiff had duly performed all conditions on her part to be performed; that immediately after October 5, 1932, plaintiff notified defendants of her loss, and was for the first time informed that policy No. 548511, insuring the destroyed residence in the sum of $3,000 under the written application of July 18, 1930, was the only policy ever issued by them; that defendants denied all liability in the transaction evidenced in part by the written application of September 30, 1930; that thereupon defendants did pay the $3,000 insurance as provided by policy No. 548511, but have at all times refused, and still refuse, to pay the $900 additional insurance due plaintiff as herein alleged. Plaintiff prayed for judgment in the sum of $900, and interest, and attorney fees.

The sufficiency of this petition was in no manner questioned save in one particular. Defendants presented a motion asking that plaintiff be required to attach to her petition a copy of the application for the additional insurance, which motion was denied.

Defendants filed an answer consisting of: (1) A general denial; (2) an admission of the corporate capacity of each of the defendants, and that the Columbia Fire Underwriters Agency, Omaha, Nebraska, is the agent of the National Fire Insurance Company of Hartford, Connecticut, and authorized to write insurance for the defendant, said National Fire Insurance Company; (3) admit that the National Fire Insurance Company issued policy No. 548511 insuring plaintiff's property; (4) deny that any additional insurance was applied for, or that defendants accepted any application for additional insurance, or that any contract for additional insurance existed between plaintiff and defendants on October 5, 1932, at the time of the loss; (5) allege that the claim of plaintiff for $900, here in suit, has been fully settled, paid and discharged by defendants.

To this answer plaintiff filed a reply consisting of a general denial, and also matters controverting defendants' allegations of settlement.

The record further sets forth that a trial was had on the above issues in the district court for Dawson county to a jury duly impaneled and sworn. At this trial it was stipulated between the parties, as follows:

"That John C. (Jack) Haley was a duly authorized and acting local agent at Lexington, Dawson county, Nebraska, and the territory adjacent thereto, for the Columbia Fire Underwriters Agency of the National Fire Insurance Company of Hartford, Connecticut, * * * on July 18, 1930, and on September 30, 1930. That as such agent, the said John C. Haley was empowered to take and solicit applications for policies on farm properties, and that he was also authorized agent to write policies on city properties. That he was authorized to collect premiums on the applications taken on farm properties and the insurance written on city properties and remit the same to the defendants; and that he was, so far as the defendant companies were concerned in the above matter, the local agent of the defendant companies, with authority as above stipulated. That agent's license No. 32487 was issued to the said John C. (Jack)

Haley by the department of trade and commerce, bureau of insurance of the state of Nebraska on May 1, 1930, for the Columbia Fire Underwriters Agency of the National Fire Insurance Company of Hartford, Connecticut. That said license would not expire until April 30, 1931, and was not canceled during that year."

By virtue of these admissions, under the express terms of the statute, Haley, therefore, "shall be deemed to all intents and purposes an agent * * * of such company." Comp. St. 1929, sec. 44-307.

The applicable maxim here is: *"Qui per alium facit per seipsum facere videtur,"* "He who does an act through another is deemed in law to do it himself." Broom's Legal Maxims (9th ed.) 530.

For the purpose of this action, the application for insurance of September 30, 1930, must, therefore, be deemed to have been taken by defendants in their corporate capacity, and in that manner to have been received by them, together with the premium paid thereon, and that such application and moneys so received must be deemed to have been held and retained by and under their exclusive control without taking action thereon or giving any notification to plaintiff of the real situation until after October 5, 1932. 32 C. J. 1063; *Rankin v. Northern Assurance Co.,* 98 Neb. 172; *Cline v. Fidelity Phenix Fire Ins. Co.,* 113 Neb. 481; *Whitehall v. Commonwealth Casualty Co.,* 125 Neb. 16.

"In accordance with this rule the company is liable in damages for the fraud or other wrongful acts of its agent within the scope of his actual or apparent authority, such as failing or unreasonably delaying to send the application to the company." 32 C. J. 1064.

It may be said that plaintiff's evidence tendered and received generally sustained the allegations of the petition. Among other matters, plaintiff testified, in substance, that the insured residence was of the value of $5,000; that the premium of $50.35 paid to the company's agent at the time of signing the written application had never been re-

turned; that plaintiff believed that the policy had been issued as applied for, and had been transmitted by the insurance company to her mortgagee at Beatrice, Nebraska, in the same manner as agreed upon and as the previous policy No. 548511 had been, and that her first information on the subject to the contrary was received after the destruction of the insured premises on October 5, 1932. She also testified to facts tending to negative defendants' contention that the claim of $900 had been settled by them. Other evidence also was offered in plaintiff's behalf. On the foundation that the application of September 30, 1930, for the $900 additional insurance was made to the same party and on the same kind of blank as that employed in the application of July 18, 1930, the original application executed by plaintiff was admitted in evidence. This application is addressed to the Columbia Fire Underwriters Agency of the National Fire Insurance Company of Hartford, Connecticut. At the extreme top of this instrument, as a part of the original blank on which it was prepared, appear the printed words: "Subject to approval of said company and to terms and conditions hereof and of the policy that may be issued hereon." Further, plaintiff's evidence is that $50.35 was the correct amount at the regular established rates of insurance which prevailed in this community on this class of risks in September, 1930.

Defendants' evidence included testimony in substance that the course of business is such that, when an application for farm insurance is taken, the soliciting agent forwards it to the Omaha office for approval, and, if approved, a policy is issued and forwarded to the agent for delivery; that the office in Omaha is the only office in Nebraska which accepts or rejects applications for farm insurance and issues policies if they are accepted; that neither the application for the $900 insurance made by plaintiff, nor the premium of $50.35 paid by her, has ever been received at this office. Defendants also took issue on the value of the farm residence. Their testimony is that its replacement value at the time of the fire was but $3,394. How-

ever, in securing this result their expert had deducted as "depreciation" the sum of $848.50. The state agent of the Columbia Fire Underwriters Agency, who has supervision of the entire insurance business of the defendant companies, testified that, though the company does insure farm residences in excess of $3,000, that sum is the maximum amount, and one which the companies exceed only after a special examination of the premises insured. He further testified that, if the report on special examination had disclosed that the value of the farm residence involved was but $3,394, "we would not have issued the additional insurance on that valuation." This testimony was elicited after plaintiff had testified to a valuation of this building at not less than $5,000. This witness, the state agent of defendants, however, did not testify as to whether or not on the valuation of $5,000 the premises would have been insurable to the extent of $3,900. Defendants offered no testimony on this subject as applied to a $5,000 valuation. See 64 C. J. 713.

At the close of all the evidence the defendants moved the court in the alternative for a dismissal of the action, or that the jury be instructed to return a verdict for the defendants, "for the reason that it appears beyond dispute that Mr. J. C. Haley was only soliciting agent of the defendant companies and had no authority to make any contract of insurance involving farm risks, his authority being limited to the taking of applications and submitting them to the state agents at Omaha for acceptance or rejection; that the plaintiff knew of this limitation of the agent's authority and that the application must be submitted to the state agent for approval or rejection; that the evidence is further conclusive that the only application submitted to the state agents of the defendant companies was the application, dated July 18, 1930, and no subsequent application was ever submitted to the state agents or premium paid to them for any other or additional insurance, and no contract of insurance was made with the plaintiff other than the policy, No. 548511. And

the further reason why the motion should be sustained is, that the evidence here shows that, after the loss, the loss was fully adjusted for the sum of $3,750, and the amount of the adjustment paid to the plaintiff and mortgagee as full settlement of all claims against the defendant companies."

This motion the district court sustained, and pursuant thereto verdict was returned for defendants. The plaintiff appeals.

The gist of defendants' contentions was that in the present action plaintiff must establish, as basis for recovery, a valid contract for insurance, or a valid contract of insurance, neither of which, due to the limitation on the powers of Haley as soliciting agent, was ever made between the parties to this litigation, and, at all events, all claims of plaintiff, including those here in suit, were fully and finally settled by the defendants.

These contentions must be considered in the light of the requisites of defendants' motion for a directed verdict.

Briefly, the controlling principles on this procedure appear to be: "A motion for a directed verdict need not be in writing. It may be informal, and is frequently made by presenting to the court a peremptory instruction to be given or refused. *The particular grounds upon which verdict is directed must be stated in the motion, or in the direction of the verdict.*" (Italics ours.) 25 Standard Ency. of Procedure, 1068.

The reason for the requirement italicized above is given by the authorities substantially as follows: "It is due to the court and the opposing counsel that their attention should be called to the precise defect in the evidence or the omission of evidence that the party claims entitles him to the direction of the verdict. It is due to the court to enable it to pass understandingly on the motion, and it is due to counsel that he may, if possible, supply the defective or omitted evidence, if permitted to do so by the court." *Tanderup v. Hansen,* 8 S. Dak. 375. See, also, *Baker v. Joseph,* 16 Cal. 173; *Coffee v. Greenfield,* 9 Pac.

Coast Law Journal, 38; *Hanson v. Lindstrom,* 15 N. Dak. 584; *Smalley v. Rio Grande Western Ry. Co.,* 34 Utah, 423; *Gardiner v. Schmaelzle,* 47 Cal. 588; *Rayl v. Estate of Hammond,* 95 Mich. 22.

In the following cases this court has approved the reception of evidence tendered by a party after a decision against him involving an issue similar to that presented here. *Dunn v. Bozarth,* 59 Neb. 244; *Riley v. Missouri P. R. Co.,* 69 Neb. 82.

The conclusion would therefore appear to be justified that in the instant case the order of the trial court sustaining defendants' motion, and directing verdict should be approved, if at all, on the particular grounds set forth in the motion.

So, too, this jurisdiction is committed to the view that where, upon a jury trial, at the close of all the evidence, the defendant moves the court for a directed verdict in his favor, such motion must be treated as an admission of the truth of all material and relevant evidence admitted favorable to plaintiff, and all proper inferences to be drawn therefrom; and if the evidence tends to sustain the allegations of the petition and the petition states a cause of action, the case should be submitted to the jury. *Curtice Co. v. Estate of Jones,* 111 Neb. 166; *Wheeler v. Abbott,* 89 Neb. 455.

Also, the trial court is not justified in withdrawing a case from a jury if there is competent evidence from which the alleged facts may be reasonably inferred. *Oleson v. Oleson,* 90 Neb. 738.

The question as to whether the petition in the instant case states a cause of action, and the nature of the cause set forth, if any, is of course to be determined by a proper construction of our Code provisions. It is provided by section 20-101, Comp. St. 1929, that "there shall be * * * but one form of action, which shall be called a 'civil action.' "

Section 20-501 provides: "A civil action must be commenced by filing in the office of the clerk of the proper

court a petition, and causing a summons to be issued thereon."

Section 20-803 provides, in part: "The only pleadings allowed are: First. The petition by the plaintiff."

Section 20-804 reads as follows: "The petition must contain: First. The name of the court and county in which the action is brought, and the names of the parties, plaintiff and defendant; Second. A statement of the facts constituting the cause of acton, in ordinary and concise language, and without repetition; Third. A demand of the relief to which the party supposes himself entitled. If the recovery of money be demanded, the amount thereof shall be stated; and if interest thereon be claimed, the time from which interest is to be computed shall also be stated."

In the construction of these Code provisions, "It must be borne in mind that the word 'facts,' as used in the Code, * * * means a narrative of the events, acts, things done, etc., which show a legal liability of the defendant to the plaintiff." Further, that "A petition * * * is sufficient if, from the naked statement of facts therein, the law will entitle the plaintiff to recover thereon." And that "The legal effect of the facts pleaded need not be stated as at common law, as it is the duty of the court to apply the law to such facts." Maxwell, Code Pleading, 76, 77.

So, also, "No issue can be framed upon an allegation as to the law. Facts only are pleadable, and upon them, without allegation, the courts pronounce and apply the law." Maxwell, Code Pleading, 106.

Thus, in *Alter v. Bank of Stockham*, 53 Neb. 223, this court announced the doctrine: "To maintain a civil action under our Code, it is not essential that the action be denominated either an action at law or in equity, nor that it be given any particular name. If the litigant pleads the facts, and they constitute a cause of action or defense, the courts are bound to award the relief due." See, also, *Hopkins v. Washington County*, 56 Neb. 596; *Gilbert v. Rothe*, 106 Neb. 549.

Under the Code provisions quoted, interpreted in the

light of the foregoing authorities, the cause of action sued upon in the instant case embraced only the ultimate facts set forth in plaintiff's petition. In other words, it is properly restricted to the "narrative of the events, acts, things done, etc.," which made up the factual transaction out of which the litigation proceeds.

But in the instant case the plaintiff, in truth, after setting forth the ultimate facts constituting her cause of action, added thereto her conclusion as to the legal effects of the facts so pleaded. This was, as we have seen, obviously a violation of the accepted rules of Code pleading. For, upon the sole foundation of such ultimate facts so pleaded, in effect she charges that thereby a contractual relation was created between plaintiff and defendants and was broken, entitling her to recover. The result of traversing this allegation was a futile attempt to frame an issue of law. But no issue in Code pleading, where by statute the pleader is restricted to "a statement of the facts constituting the cause of action in ordinary and concise language, and without repetition," can be framed on an allegation in a petition as to the law. Maxwell, Code Pleading, 106.

"The court will, when possible, sustain the theory intended by the pleader. But that a certain theory was evidently contemplated by the person who drew the pleading is of no avail as against the theory shown by the facts alleged." 49 C. J. 118.

This, in turn, is quite in conformity with the spirit of our Civil Code, which requires: "The court in every stage of an action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party." Comp. St. 1929, sec. 20-853.

Therefore, in the instant case, the allegations relative to the creation of a contractual relation must be regarded as mere surplusage, and so far as questions of pleading are concerned, the correctness of the trial court's action must be determined in the light of the ultimate facts alleged in the petition.

.We do not take issue with the contention of defendants that the allegations of the petition, properly considered, and the proof in support thereof, under the long-established rule in Nebraska, do not establish the existence of a contract between the insurance company and plaintiff. *St. Paul Fire & Marine Ins. Co. v. Kelley,* 2 Neb. (Unof.) 720; *Johnston v. Indiana & Ohio Live Stock Ins. Co.,* 94 Neb. 403; *Handlier v. Knights of Columbus,* 106 Neb. 267; *Muhlbach v. Omaha Life Ins. Co.,* 107 Neb. 206; *Farmers & Merchants Ins. Co. v. Graham,* 50 Neb. 818. But we are also of the opinion that, in consideration of the ultimate facts pleaded, and the evidence in the record sustaining plaintiff's action, this proceeding is not based on a strictly contractual liability, but is a "tort action," as that term is commonly employed. The facts in the instant case, therefore, invoke the application of the principles announced by this court in *Strand v. Bankers Life Ins. Co.,* 115 Neb. 357. That case involved a transaction in life insurance, but the principles announced therein by Rose, J., in delivering the opinion of the court, are equally applicable to the case now before us. Judge Rose there said in part:

"Plaintiff did not attempt to plead a cause of action for insurance, but confined his remedy to damages for negligence. An action based on negligent failure of a life insurance company to act promptly on an application for insurance after a conditional payment of the premium is comparatively new in the law of insurance. There is a diversity of opinion on the subject. In *National Union Fire Ins. Co. v. School District,* 122 Ark. 179, L. R. A. 1916 D, 238, the opinion contains the following:

" 'The better reason and the decided weight of authority supports the doctrine that mere delay in passing upon an application for insurance cannot be construed as accepting such application and consenting to be bound for the insurance sought by it, nor can a cause of action for negligence be grounded upon such delay.'

"*Interstate Business Men's Accident Ass'n v. Nichols,* 143 Ark. 369, seems to be a case of like import. Judge

Cornish took the same view in *Meyer v. Central States Life Ins. Co.,* 103 Neb. 640, 644.

"On the contrary, a right of action for negligence in failing to act promptly on an application for insurance has been recognized by some of the courts of last resort. *Wilken v. Capital Fire Ins. Co.,* 99 Neb. 828; *Duffie v. Bankers Life Ass'n,* 160 Ia. 19; *Johnson v. Farmers Ins. Co.,* 184 Ia. 630; *Boyer v. State Farmers Mutual Hail Ins. Co.,* 86 Kan. 442. Cases on both sides of the question are discussed by the supreme court of Illinois in an opinion reported and annotated in 15 A. L. R. 1021, under the title of *Bradley v. Federal Life Ins. Co.* The case is reported also in 295 Ill. 381.

"The view that there is a remedy based on negligence seems to be founded on reason and justice. The receipt in the present case shows on its face that the insurance company, without assuming any insurance risk, accepted conditionally the first annual premium. The transaction makes the insurance company applicant's trustee for the return of the premium if the application is rejected and for the unconditional acceptance of the premium if the application is approved and the policy delivered. In connection with the application the receipt implies time for a proper investigation of the risk under consideration. Good faith and fairness of both parties are required in negotiations for insurance. The retaining of the money of the applicant beyond a reasonable time would deprive him of its possession and use during the delay. The use of the money or interest thereon is a valuable right. Negligent or inexcusable delay on the part of a trustee is a wrong, if it deprives the beneficiary of the use of a trust fund which has served its purpose as such. The receipt, the application and the report of the examining physician imply a duty on the part of the insurance company to act on the proposed risk within a reasonable time under the circumstances surrounding the negotiations. In addition, an unreasonable delay and the retention of an unearned premium might deprive an insurable applicant of an op-

portunity to apply elsewhere for and to procure life insurance. Furthermore, an insurance company transacts business under a charter from the state. It is now recognized that insurance is affected with a public interest. It is regulated by the government for the protection of the insuring public. The privilege of an insurable person to apply to a licensed insurer for insurance is a vital feature of domestic life as well as of the industrial world. The possession of a premium held by an insurance company as a trust fund, without any obligation for insurance prior to the issuance and delivery of a policy, imposes the duty of acting on the application within a reasonable time. The conclusion therefore is that there is a remedy in the form of an action in tort for an unnecessary and negligent delay in performing such a duty, if it prevents an insurable applicant from procuring a policy which he would otherwise have received, thus causing a loss."

In the instant case the "ultimate facts" do not constitute a claim for insurance, but invoke a remedy for damages for failure of the insurance companies to promptly and seasonably perform the duty which these facts, in view of the nature of the business of the companies, imposed upon them. Under the principles announced in *Strand v. Bankers Life Ins. Co., supra,* on the record in the instant case, plaintiff was entitled to relief, the extent of which, under the evidence, was a proper question for the determination of the trial jury.

The settlement of this cause of action, claimed by the defendants, cannot be sustained. Their liability for the amount paid by them for the loss covered by their policy No. 548511 was, at the time of the alleged compromise, unquestioned. It was an existing legal and moral obligation. The rule is that the performance of, or promise to perform, an existing obligation is not a valid consideration. For lack of sufficient consideration the claimed settlement of the "additional insurance" is, therefore, wholly invalid. 13 C. J. 351; *Armann v. Buel,* 40 Neb. 803; *Esterly Harvesting Machine Co. v. Pringle,* 41 Neb. 265; *Allen v. Plasmyere,* 3 Neb. (Unof.) 187.

It appearing, therfeore, that the "particular grounds" stated in defendants' motion for a directed verdict were wholly without support of controlling facts in the record before us, and wholly inapplicable thereto, and that the pleadings and evidence fairly established a controversy for the determination of the trial jury, the district court erred in sustaining such motion and in entering judgment for the defendants.

The judgment of the trial court is reversed and the cause remanded for further proceedings in harmony with this opinion, with directions to permit the parties, on application, to amend their pleadings to conform to the law of the case herein declared.

REVERSED.