R. A. BLEICHER, APPELLEE, V. WILLIAM C. HEETER, APPELLANT.

4 N. W. (2d) 897

FILED JULY 17, 1942. No. 31315.

*G. E. LaViolette,* for appellant.

*C. E. Walsh, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

EBERLY, J.

This is an action by Bleicher, an insurance agent, doing business as R. A. Bleicher & Company, against Heeter, the defendant, to recover certain premiums advanced by the former upon three certain policies of fire insurance issued by him to Heeter covering property owned by the defendant, and in which policies the latter is the assured. It is alleged that the total premiums, according to the terms of the three policies, amounted to $57.26; that no part of the same has been paid by Heeter, except the sum of $4.40 paid on October 2, 1939, and $10 paid on December 30, 1939. The plaintiff asks judgment for the balance due.

Heeter's defense includes the claim that he paid to plaintiff an additional $10 for which no credit was given, making the total deduction the sum of $24.40 to which he was entitled; that the three policies were duly canceled by the companies issuing the same on February 23, 1940, effective February 28, 1940, on the *pro rata* basis and defendant was entitled to credit for unearned premium on the policies as of the date of cancelation; that, excluding the disputed item

of $10, there was due to plaintiff on the date of cancelation the sum of $19.81, and no more, and that this amount was duly tendered to plaintiff and the tender kept good.

The answering claim of the plaintiff is that the canceled policies were never turned in or delivered to plaintiff, and no cancelation was effected by defendant because of such failure.

It may be said that this case was originally tried in the municipal court of Omaha, and by stipulation it was tried in the district court on the pleadings as filed in the municipal court. The contentions of the respective parties were necessarily gleaned from the record as an entirety. The trial in the district court resulted in a judgment for the plaintiff in full of the demands made. From the order of the district court overruling his motion for a new trial, the defendant appeals.

Preliminary to a discussion of the merits of the appeal, we note that the petition alleges that "plaintiff is engaged in the insurance business as an insurance broker," etc. From the evidence in the record, including the policies of insurance from which this litigation arises, and the indorsements thereon, the facts appear that plaintiff takes applications for insurance, and writes policies covering the same which are signed and issued by him at his Omaha office. He thus appears as operating a recording agency. He is, therefore, an "agent" within the provisions of section 44-307, Comp. St. 1929, providing that, "Any person * * * who shall in any wise make or cause to be made any contract or contracts of insurance, for or on account of such company aforesaid, shall be deemed to all intents and purposes an 'agent' * * * of such company." See *Rhoads v. Columbia Fire Underwriters Agency*, 128 Neb. 710, 260 N. W. 174.

Furthermore, it fairly appears that plaintiff obtained the business and signed each policy issued thereon as agent of the company insuring. Obviously, he must be treated in this proceeding as an "agent," and, for the purposes of this action, as representing the companies and not the assured.

*Robinson v. Union Automobile Ins. Co.,* 112 Neb. 32, 198 N. W. 166.

An agent authorized to solicit and receive applications for insurance and to countersign and issue policies entrusted to him for that purpose is a general agent. 26 C. J. 42, and cases cited.

Where a policy issued by a foreign company is not valid until countersigned by a local· agent, such agent will be deemed to be an officer having power to issue the policy, although it contains a provision that it shall not be valid until countersigned by certain officers of the company. 26 C. J. 42, and cases cited. See, also, 26 C. J. 287.

All parties admit that the defendant failed to completely pay the premiums on the three policies of fire insurance issued to him. The defendant's claim is that his payments thereon amounted to $24.40. Plaintiff's assertion is that such payments amounted to $14.40, and no more. As to the events that led up to the cancelation of these policies, we find a decided conflict in the evidence.

Bleicher testifies: "Q. Now, referring to the exhibits as to the purported cancelations, did you have any conversation before February the 23d with Mr. Heeter? A. On the morning of the 23d I saw Mr. Heeter, and he got kind of hostile, and I told him there was no need of doing anything like that, 'We are either going to get paid the account or we will be through.' So he requested cancelation of the policies, and I granted him the request. Q. Did you ask at the time for the return of the policies? A. Oh, yes; and he promised to bring those policies in. Q. And did he ever bring the policies in? A. No, sir."

This evidence, except as to nondelivery of the policies, is clearly and unqualifiedly denied by defendant. He testifies that he never made any request for the cancelation of any of the policies. It must be said, however, that plaintiff's case is largely presented here on the theory that defendant requested the cancelation of the policies of insurance and then failed to deliver the policies or to pay the amount of premium due, computed at the short rate. But this theory is not de-

terminative of the real issues of the case without reference to the condition of the record on the matters to which this conflicting evidence relates.

In 1885 our legislature enacted chapter 57 of the session laws of that year, entitled, "An Act to provide for canceling insurance policies." Its provisions were devoted wholly to creating and defining the rights of the assured to a cancelation of any policy of insurance, and the return of the unearned premium at any time upon such request by him made, less certain deductions therein specified. In 1913 (Laws 1913, ch. 154, sec. 72) this law of 1885 was reenacted verbatim by our Insurance Code of 1913, it now appearing as section 44-342, Comp. St. 1929, and there was then added thereto the sentence: "Any company or association also reserves the right to cancel any policy or any part thereof by tendering to the assured the paid unearned premium." In the policies herein involved, as issued to the defendant, are the following provisions: "This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancelation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is canceled by the company by giving notice it shall retain only the *pro rata* premium."

If, therefore, we have actually here presented a cancelation made by the insurer as above authorized, the conflict in the evidence as to the promise to return the policies becomes wholly immaterial.

However, the facts here presented invoke the application of the rule that, "The agent advancing premiums is entitled to recover all sums so advanced as money paid out and expended, or on the principle of subrogation; and he has a lien on the policy therefor whenever it comes into his hands, unless he has abandoned it." 26 C. J. 62.

Nevertheless, notwithstanding the remittance of premi-

ums by R. A. Bleicher & Company, three contracts of insurance, as to all their terms, rights and incidents, still remain in full force and effect as the contracts of the insurer and the insured. The advancement of premium by the agent of the insurer in no manner affects the rights of a cancelation exercisable by the parties to the insurance contract, and the amount of his recovery is necessarily affected by the rights actually exercised by either party to the same. In the instant case, if the insurer terminated the contract by cancelation, the obligation of the insured to pay premium was thereby reduced to the premium earned while the risk was being carried. This is determinable on the *pro rata* basis of the premium charged for the entire term insured and the possible recovery must be limited accordingly.

However, plaintiff challenges the sufficiency or validity of the registered notice of cancelation of the three policies, the unpaid premiums on which form the basis of his causes of action in the instant case. For various reasons he now claims the service of these notices of cancelation did not terminate the existence of the policies to which these notices were directed, but that such insurance contracts remain in full force and effect. The facts as to this service of notice include the following: In February 23, 1940, there was transmitted to Heeter by R. A. Bleicher & Company (R. A. Bleicher), who operated the agency that issued the three policies, by registered mail, a notice and statement in writing that these instruments had been canceled on the *pro rata* basis "as of February 28, 1940," which further recited, "The reason we have canceled this policy on the 28th of February is that you are entitled to five days before we cancel the policy." A separate statement was transmitted for each policy involved. Transmitted with these statements was a communication signed by R. A. Bleicher & Company, which contained the following declaration: "These policies are canceled for nonpayment of premium and they are canceled on a *pro rata* basis and we are giving you five days' notice as required by law to take care of these elsewhere and you will note these policies are effective until the 28th of February,

1940." The intent to accomplish a complete cancelation is clearly and unconditionally expressed. Also, it appears with equal clearness that the cancelations thus made by the insurers were fully justified and authorized under the provisions of the several policies hereinbefore quoted, and as provided by the 1913 amendment contained in our Insurance Code, now carried as the last sentence in section 44-342, Comp. St. 1929.

It will be remembered that, had the cancelation been made at the request and option of the assured under section 44-342, Comp. St. 1929, it would have involved a determination of the amount due insurer on the short rate basis which was not contemplated by the notices of cancelation actually given and served upon the insured by the insurers in this case. The cancelations here sought must be deemed to have been made by the insurers on their own motion, and not as a requirement of the insured. It follows that the Nebraska cases decided by this court prior to 1913 on the subject of cancelation of insurance policies upon the request of the assured, cited by appellee in his brief, are not controlling in the instant case. The law authorizing the present proceeding was not enacted when the cases last referred to were determined.

Under the terms of section 44-342, Comp. St. 1929, cancelation of fire policies is accomplished by the insurer by service of a notice to that effect upon the insured, and "by tendering to the assured the paid unearned premium." In each of the three policies here canceled, there being no "paid unearned premium," no moneys were required to be paid or tendered, and the sole duty resting on the insurers was the service of notice as here made. The return of the canceled policies by the assured under these circumstances was not made a requirement of a valid cancelation, nor may it be demanded by the insurers as a condition to cancelation.

It seems well established, however, that, "On cancelation of a policy (by insurer) for nonpayment of premiums insurer is entitled to recover premiums earned while the risk was being carried." 26 C. J. 112. This amount is determinable on a *pro rata* basis of the full term rate and obviously the

insurance company can receive no more. True, none of the insurance companies whose policies were thus canceled are parties to this proceeding. The undisputed evidence is that all the premiums on the policies here involved were remitted to the insurers therein named by R. A. Bleicher & Company who as local agent of each of the insuring companies secured the risk, wrote, countersigned and issued such policies. There is no evidence that the defendant had knowledge of the fact of such payment. However, the rights secured by the terms of these policies as between the insured and the insurers were in no manner changed by this voluntary advancement of premiums made by R. A. Bleicher & Company. The right of cancelation by the insurers provided for by section 44-342, Comp. St. 1929, was still effective and in no manner modified or impaired thereby, and the requirement to return "paid unearned premium" remained in full force and effect where such premium had been actually paid by assured, but limiting recovery of unpaid premiums to such as were earned while the risk was being carried, where payment of such premium had not been made by the assured.

But the plaintiff now challenges the validity of the notices of cancelation transmitted by him, as agent of the insurers, to the defendant Heeter, and claims the policies were never canceled but remain in full force and effect. In this relation, it is to be remembered that he was at all times the lawful agent of the insuring companies; that as such he obtained the insurance from the defendant, wrote, signed, and issued each policy, and delivered the same to the defendant; that as such agent he prepared, signed, and issued the notice of cancelation hereinbefore referred to, and caused the same to be served on the defendant by registered mail. By necessary implication he vouched for the truth of the statements in each of the notices and statements then served therein contained. It now appears that, as to the sum now claimed by him for premiums advanced, he is, and was at the time of the service of notices of cancelation, the owner thereof and the real party in interest.

The evidence is without contradiction that these notices of

cancelation thus prepared and served on the defendant were by him accepted, and by him believed to be true as the terms thereof purported to express, and to legally accomplish their declared purpose. Further, that relying thereon, on the 28th day of February, 1940, defendant secured new policies of insurance covering his property, formerly insured by the policies purported to have been canceled by plaintiff's notices, and thereby necessarily represented to the new insurer that the canceled policies ceased to be effective on and after February 28, 1940.

This new situation, in view of the surrounding circumstances including the acts and positive representations of the plaintiff, invokes this well-established principle of estoppel: "Where one, by his words or conduct, wilfully causes another to believe in the existence of a certain state of facts, and induces him to act on that belief or to alter his previous condition, the former is concluded from averring against the latter a different state of things as existing at the same time." *Cain v. Boller,* 41 Neb. 721, 60 N. W. 7. See, also, *Lydick v. Gill,* 68 Neb. 273, 94 N. W. 109; *Preston v. Mann,* 25 Conn. 118, 128; *Graham Ice Cream Co. v. Petros,* 127 Neb. 172, 254 N. W. 869.

It follows that, under the circumstances of this case, as between the parties to this proceeding, the three policies involved must be deemed as canceled by the insurers, and that thereby the recovery of premium was limited to the premium earned to the 28th day of February, 1940. We note that the evidence in this record tends to show that this limited amount was tendered to the plaintiff by the defendant prior to the trial in the district court, and the tender by plaintiff refused. We, therefore, find that the district court erred in the amount of the judgment entered by it from which the defendant appealed.

The judgment of the trial court is, therefore, reversed, and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.