DOROTHY RACHEL BAYER, APPELLANT, V. LUTHERAN MUTUAL
LIFE INSURANCE COMPANY, WAVERLY, IOWA, A
CORPORATION, APPELLEE.
172 N. W. 2d 400

Filed November 28, 1969. No. 37329.

Ray C. Simmons, for appellant.

F. W. Carstens, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

Plaintiff claimed accumulated dividends, interest, and other benefits of $1,867.38 under a 30-year endowment insurance policy on completion of the 30-year term. A general agent of defendant insurer had misrepresented the amount of benefits in a letter to plaintiff's mother during plaintiff's minority and shortly after issuance of the policy. Defendant's tender of $1,415.69 due without reference to the letter was refused. After a hearing on motion of each party for summary judgment the district court rendered summary judgment for defendant, and plaintiff has appealed. Defendant denies (1) any agreement by the agent respecting benefits of $1,867.38, (2) any right of the policyholders to rely on the letter, and (3) any vicarious liability on the transaction.

Defendant, a mutual company, had issued the policy on July 14, 1938, on the life of plaintiff, age 17. The face amount, $1,000, was based on an annual premium of $32.60. On the front fold and at the top of the first page of the policy appear the words "Dividends Payable Annually." Other headings are "THIRTY YEAR SAVINGS REFUND," "THIRTY Year Endowment," "Face Amount Payable at Maturity Date," and "Increased Death Benefit Payable Prior to Maturity Date." Inside the policy a table of nonforfeiture options lists values at completion of the 16th and 30th years respectively as follows: Death benefits, $1,289, $1,702; cash values,

$411.99, $1,000; and paid-up life insurance and cash, $1,000 and $6.41, $1,000 and $475.77.

Respecting dividends, the printed policy reads: "At the end of the second policy year and annually thereafter, this policy while in full force, except as extended insurance, shall participate annually in the divisible surplus as apportioned by the Board of Directors of the Company. Dividends . . . may be . . . D. Left to accumulate to the credit of the policy with compound interest at such rate as may be determined by the Company, but never less than three per cent per annum . . . ."

On August 19, 1938, plaintiff's mother sent a letter inquiring about the policy to Paul B. Hellbusch, solicitor of the application and general agent of defendant. The letter was not preserved. On August 22 Hellbusch in reply wrote on his letterhead disclosing his general agency for defendant: "I will see you within . . . ten days and we can examine your daughter's policy at that time and also discuss other forms issued by our company . . . However, I want to say that the figures shown on the policy do not include any dividends and that the $6.41 shown after the 16th year is cash in addition to a $1000 paid-up participating policy. The cash value at that time is $418.40 or $528.21 if the dividends have not been drawn . . . . After 30 years Dorothy can take a $1,000.00 paid-up policy and receive . . . $867.61 in cash if the dividends have been left with the company. If she does not want . . . the protection after 30 years, she can draw $1867.38 in cash providing she has left the dividends with the company each year. If the dividends are not left . . . , she will still have $1457.77 at the end of 30 years . . . ."

Defendant's rate book (1938) respecting the printed policy contains this information:

| "End of<br>Year | Death<br>Benefit | Cash or<br>Loan | Paid Up<br>Ins. | Net<br>Amount<br>Invested | Dividend<br>Accumu-<br>lated |
|---|---|---|---|---|---|
| 15 | $1265 | $ 378.43 | $949.00 | $406.25 | $ 97.75 |
| 16 | 1289 | 411.99 | 6.41* | 429.72 | 109.81 |
| 30 | 1702 | 1000.00 | 475.77 | 697.09 | 391.61 |

"Settlement Options at Maturity:
    First:    $1,000 in cash.
    Second:   $1,000 Paid-Up Policy and $475.77 in cash.
    Third:    $1,908 Paid-Up Policy . . . .

"Dividend figures and accumulations used in these illustrations are not guaranteed. Based on present dividend schedule.

"*Values from here are cash payable immediately in addition to $1,000 Paid-Up whole life insurance."

Defendant had conferred express authority on Hellbusch to appoint agents and to collect premiums, but not to prescribe form or character of policies. Antirebate and records provisions of his general agency agreement read in part: "He shall not . . . agree to . . . allow . . . any special . . . advantage in the dividends . . . to accrue, or any valuable consideration . . . whatever not specified in the policy . . . . He shall . . . preserve as the property of the Company all . . . correspondence and records of all kinds which at any time shall come into his possession . . . relating to transactions by or for the Company . . . ."

The printed policy contains language limiting authority of agents: "No agent of the Company . . . , except the President, a Vice President, the Secretary or Assistant Secretary, has power to make, modify, or discharge this or any contract of insurance . . . , or to bind the Company by making any promise respecting any benefits hereunder . . . ."

Defendant admitted the fact of reliance by plaintiff and her mother on Hellbusch's representation. It contends, however, that the policyholders had no right to

rely on the letter which simply illustrated without promising future dividends or interest. Defendant cites Kaley v. Northwestern Mutual Life Ins. Co., 102 Neb. 135, 166 N. W. 256 (1918), which applied Wisconsin law to an agent's statement headed "A Conservative Estimate of a Semitontine Policy . . . ," a 20-year endowment policy issued in 1899. The case is not controlling.

Section 44-362, R. R. S. 1943, which originated in Laws 1913, c. 154, § 141, p. 467, provides: "No insurance company, or any . . . agent . . . thereof . . . shall issue . . . any estimate, statement or circular misrepresenting . . . any policy issued or to be issued by such company, or misrepresenting the benefits . . . promised under any such policy . . . ."

The letter is to be interpreted according to this standard: An insured has no right to rely upon an agent's patently absurd interpretation of a policy. He ordinarily may rightfully rely, however, upon an agent's interpretation that is plausible and not in patent conflict with the printed policy although legally untenable. Mutual Ben. Life Ins. Co. of Newark, N. J. v. Bailey, 55 Del. 215, 190 A. 2d 757 (1963). The statement of benefits in Hellbusch's letter was promissory, not illustrative, and plaintiff and her mother had a right to rely on it. See, generally, Belth, "Life Insurance Price Measurement," 57 Ky. L. J. 687 (1969); Comment, 6 Houston L. Rev. 810 (1969).

On the question of vicarious liability the title "general agent" without more has no fixed meaning in the business world. The general agent of an insurance company is ordinarily one who himself employs agents to carry out the business of the company. Restatement, Agency 2d, § 3, Comment e, p. 17. An agent with authority to solicit insurance applications and to countersign and issue policies entrusted to him for that purpose is a general agent. He may possess the authority

of a corporate officer. Bleicher v. Heeter, 141 Neb. 787, 4 N. W. 2d 897 (1942).

An insurer treating general agents' correspondence as its records is ordinarily charged with knowledge of the general agents' letters that promise policyholders future dividends. Keeping silent and receiving premiums sometimes bars the insurer from avoiding liability on the promise notwithstanding an exculpatory clause of the printed policy. See Manhattan Life Ins. Co. v. Stubbs, 234 S. W. 1099 (Tex. Com. App., 1921).

The present case is one of liability. The district court erred in rendering summary judgment for defendant and in failing to render summary judgment for plaintiff in accordance with plaintiff's motion. The judgment is reversed and the cause remanded with directions that judgment be rendered accordingly. Plaintiff is allowed $750 for services of her attorney in this court. See § 44-359, R. R. S. 1943.

REVERSED AND REMANDED WITH DIRECTIONS.

NEWTON, J., dissenting.

I respectfully disagree with the result arrived at in the majority opinion. In this case the plaintiff acquired a life insurance policy, maturing in 30 years, at which time certain elections became available to her, one being the right to cash it in for a sum of money to be determined as specified in the policy. After receipt of the policy and the payment of premium, a letter was written to the policyholder by a general agent of the defendant in regard to the options available at the end of the 30-year period. In this letter the agent erroneously stated that a larger cash sum would be available to the policyholder at the end of the 30-year period than the policy provided for. Plaintiff says that she relied upon this statement and no doubt after receiving the agent's interpretation, she did expect to collect the larger sum. It may be pointed out that it is not contended nor do the pleadings allege that there was any fraud or deceit connected with this transaction and the plaintiff was not

wrongfully induced to change her position in any manner. In essence, plaintiff is contending that the letter of the general agent effected a change in or modification of the policy which she already held. The courts uniformly hold that in the absence of facts showing an estoppel, a consideration is necessary for the valid modification of the coverage provisions of an insurance policy, whether the effect of the modification is to extend or limit the risks against which the insurance affords protection. See, 43 Am. Jur. 2d, Insurance, § 354, p. 403; Annotation, 52 A. L. R. 2d 826. In line with this principle, it was held in Mutual Benefit Health & Accident Assn. v. Cohen, 194 F. 2d 232 (1952), that an insurance company, in regard to a policy maturing in 20 years, could not limit its liability for benefits unless it also reduced its premium. The present case is not one where a representation was wrongfully made to induce plaintiff to buy or reinstate a policy. It falls within the purview of the proposition announced in Hagelin v. Commonwealth Life Ins. Co., 106 Neb. 187, 183 N. W. 103: "Where there is no specific provision in a policy of life insurance for forfeiture, either whole or partial, on a breach of a condition by the assured, the court will not write one in; nor can the insurer afterwards impose new conditions creating a forfeiture without the consent of the assured, and without a new consideration."

In this case the plaintiff acquired a policy of insurance maturing in 30 years under the terms of which she agreed to pay a certain annual premium. Her responsibilities and liabilities under this policy have never changed from the date of its inception. She was never called upon to pay any sum other than that required under the original policy and she has never changed her position in any respect since she first acquired the policy. The premium was not increased after she received the agent's letter which she now claims increases the benefits she is entitled to. Clearly, there was no consideration and the agent's letter cannot be deemed a valid

revision or modification of the original policy. Were we to adopt such a theory, then the insurance company could unilaterally cut down the coverage in any policy, at any time, without decreasing the premium or giving other valid consideration therefor.

In my judgment, this case should be affirmed.

CARTER, J., joins in this dissent.