88 N.J. Super. 43 (1965)
210 A.2d 633
PHILIP KOOK AND LIONEL KRONBERG, PLAINTIFFS-RESPONDENTS,
v.
AMERICAN SURETY COMPANY OF NEW YORK, A CORPORATION, ETC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 1965.
Decided May 28, 1965.
*46 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Walter E. Monaghan argued the cause for appellant (Messrs. Schneider & Morgan, attorneys).
Mr. Harry Indursky argued the cause for respondent.
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiffs Philip Kook and Lionel Kronberg are partners in a plumbing business, under an alleged *47 oral agreement of partnership. On May 31, 1960 defendant American Surety Company of New York issued a "Comprehensive General Liability Policy" to "Philip Kook & Lionel Kronberg T/A Harry Kook & Son 656 Grand St. Jersey City, New Jersey," for a term of one year. That quoted designation is Item 1 of "Declarations" reading, "Name of insured and Address." Under the same Item 1, after the subheading "Locations of all premises owned, rented or controlled by named insured," is set forth "Same."
On June 8, 1960 a multiple-family dwelling at 359 Montgomery Street, Jersey City, New Jersey, was purchased in the names of Philip Kook and Lionel Kronberg, allegedly with funds of the partnership. Some time thereafter a personal injury suit was instituted against plaintiffs individually by one Flor Maria Rivera, whose cause of action was predicated upon the improper maintenance of the afore-mentioned residential property. It is undisputed that plaintiffs gave timely notice of the impending suit to defendant, and it is not contended that the contractual obligations of plaintiffs under the policy were unfulfilled. The insurance company, however, refused to defend the action on the ground that the liability claimed therein was outside the coverage of the policy it had issued. That litigation was ultimately settled between the parties for $400.
The instant proceedings were thereafter commenced by plaintiffs against American charging the latter with failure to meet its contractual insurance obligation. The damages sought were for the amount paid to Rivera in settlement of her tort action and the sum of $150 expended by plaintiffs for counsel fees in defending their interest. The Essex County District Court, sitting as the trier of facts, determined that American erroneously disclaimed liability under its policy and accordingly entered judgment in favor of plaintiffs. The amount of the judgment is not disputed.
Three issues are raised on appeal: (1) was evidence offered on behalf of defendant improperly excluded; (2) did the insurance coverage extend to the after-acquired dwelling structure *48 purchased with partnership funds, and (3) was the property in question in fact an asset of the partnership?

I.
The record before us contains a "Statement of the Evidence" prepared pursuant to R.R. 1:6-3. It appears therefrom that plaintiffs' case was concluded upon the admission of the insurance policy in evidence and the reception of testimony proffered by plaintiff Lionel Kronberg; and that defendant rested its case after presenting in evidence a demand for admissions and answers thereto and the taking of the testimony of one John Rebeika. The examination of Rebeika and the trial court's rulings thereon were summarized in the agreed statement:
"He is engaged in the Underwriting Department of the defendant American Surety Company. He has a long association with said defendant and is familiar with the terms and provisions of various types of comprehensive policies. Upon examination, he testified that P-1 was an insurance policy issued by the defendant company. A series of questions was then presented to this witness calling upon him to describe the nature and scope of the policy issued, the type of coverage afforded, the type of incident or accident covered and what accidents the named insureds Philip Kook and Lionel Kronberg T/A Harry Kook and Son were insured against. These questions were objected to by counsel on the ground that they called upon the witness to characterize the provisions of a document which must be permitted to speak for themselves. The objections were sustained."
The precise questions propounded to that witness, one of defendant's employees, are not revealed. It is not shown that he qualified as an expert for the purpose of adducing proofs concerning any special or trade-custom meaning or usage of any of the terms of the policy. Rather, it is inferable that he was produced to testify only as to defendant's intent regarding the scope of the insurance coverage. The uncommunicated subjective understanding or intent of one party to a written agreement as to its meaning is not admissible in a contest as to its interpretation or construction. Garden State Plaza Corp. v. S.S. Kresge Co., 78 N.J. Super. 485, 500 (App. Div. 1963), *49 certification denied 40 N.J. 226 (1963). That rule would have particular cogency in relation to an insurance contract and the insurer's intent. The trial court properly excluded the irrelevant testimony.

II.
The insurance document we are called upon to construe is characterized as a "Comprehensive General Liability Policy," and by its terms, when considered as a whole, is susceptible of an interpretation of broad liability coverage. The following provisions therein are pertinent:
Item 5 under "Declarations":
"The schedules disclose all hazards insured hereunder known to exist at the effective date of this policy, unless otherwise stated herein:"
Item I under "Insuring Agreements":

"Coverage A  Bodily Injury Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."
Item III under "Insuring Agreements":

"Definition of Insured

* * * If the named insured is a partnership, the unqualified word `insured' also includes any partner therein but only with respect to his liability as such."
Item IV under "Insuring Agreements":

"Policy Period, Territory

This policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada."
A separately typed legend on the policy form states:

"Partners as Named Insured

It is agreed that the policy applies to named partners of the partnership named in the declarations only while acting within the scope of their duties as such."
*50 A Declarations Schedule #1 is headed "Description of Hazards," with the note "The rating classifications under the Description of Hazards do not modify the exclusions or other terms of this policy," and lists as its first item heading the following: "a. Premises  operations." Thereunder is set forth:
"PLUMBING N.O.C. [not otherwise classified]  GAS, STEAM, HOT WATER OR OTHER PIPE FITTING-INCLUDING HOUSE CONNECTIONS, SHOP AND RETAIL STORES OR DISPLAY ROOMS"
The following provisions appear under "CONDITIONS":

"1. Premium

The premium bases and rates for the hazards described in the declarations are stated therein. Premium bases and rates for hazards not so described are those applicable in accordance with the manuals in use by the company.

2. Inspection and Audit

The company shall be permitted to inspect the insured premises, operations and elevators and to examine and audit the insured's books and records at any time during the policy period and any extension thereof and within three years after the final termination of this policy, as far as they relate to the premium bases or the subject matter of this insurance." (Emphasis added)
The language relating to the adjustment of premiums for undisclosed hazards, with the right of the insurer to examine and audit the insured's books and records, plainly indicates that the parties contemplated possible changes in the insurable risks within the framework of the general policy coverage. Eleven exclusions are enumerated in a separate schedule, none of which relates to after-acquired property or comprehends limitations upon the nature or scope of the real estate holdings of the insured partnership. The same applies to a separate exclusion by endorsement for nuclear energy liability.
There are many ways in which American could have limited or excluded its exposure to liability for the claim here involved, but it chose not to employ language in its form of policy appropriate to do so. For example, an insurance company may afford coverage for a partnership in relation solely to its business activities without exposing itself to liability for the unrelated business operations of the individual partners. *51 See McKinney v. Truck Insurance Exchange, 324 S.W.2d 773 (Mo. Ct. App. 1959).
By its terms an insurance agreement might expressly restrict coverage to particular premises, or the same result might be achieved by stating coverage generally but including an exception of coverage elsewhere but on the insured premises. Note, 11 Couch on Insurance (2d ed. 1963), § 44:307, p. 721. An illustration is to be found in Deban v. Continental Casualty Co., 294 Mass. 412, 2 N.E.2d 212 (Sup. Jud. Ct. 1936), which involved a policy indemnifying the insured against loss from liability for injuries sustained by persons upon a sidewalk, but excluding liability for injuries sustained by a person upon an elevator unless such was specifically described in the schedule and a premium was paid therefor. The insurer was held not liable to a pedestrian who was thrown to the sidewalk when an elevator was raised from below the walk level, where no elevator was described in the schedule of the policy. Compare Van Der Veen v. Bankers Indemnity Ins. Co., 30 N.J. Super. 211 (App. Div. 1954), which dealt with an insurance carrier that classified the business of the insured as "oil burner installation" and protected him against damages which he might be obliged to pay for injuries sustained at his premises or elsewhere in the State. This court there held that liability for injuries suffered at a place where the sidewalk had not been relaid after the installation of an underground oil burner was within the coverage of the policy. We approvingly quoted, at page 216, from McAllister v. Century Indemnity Co., 24 N.J. Super. 289, 294 (App. Div. 1953), affirmed 12 N.J. 395 (1953), citing Snyder v. Dwelling House Ins. Co., 59 N.J.L. 544, 550 (E. & A. 1896), for the statement, "If the terms used are imperfect, it is the fault of the defendants."
Moreover, in evaluating a claim of an insured, consideration should be given as to whether alternative or more precise language, if used, would have put the matter beyond reasonable question. Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7 (1961).
*52 In Imperial Casualty & Indemnity Co. v. Relder, 308 F.2d 761 (8 Cir. 1962), the court was concerned with an automobile insurance policy and used language which is here significantly applicable:
"* * * The construction of this contract should be upon the basis of the written contract itself and not upon any subjective intention of the parties. * * *
Appellant argues that to construe automatic coverage herein would throw the door open to possible fraud against the company by persons who acquired additional automobiles during the policy period but would not report them unless they became involved in an accident. There is indeed that possibility, but the policy is the appellant's own handiwork. The remedy, if it desires one, is obvious." (at pp. 763, 765)
The opinion in that case was recently quoted at length by this court in Nat'l Union Fire Ins. Co. v. Falciani, 87 N.J. Super. 157, 162-163 (App. Div. 1965).
It is the policy of our law that when an insurance agreement is to be construed the insured should be afforded protection to the fullest extent that any fair interpretation will permit. Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482 (1961). "Wherever possible the phraseology must be liberally construed in favor of the insured; if doubtful, uncertain, or ambiguous, or reasonably susceptible of two interpretations, the construction conferring coverage is to be adopted." Hunt v. Hospital Service Plan of New Jersey, 33 N.J. 98, 102 (1960), citing Boswell v. Travelers Indemnity Co., 38 N.J. Super. 599, 605 (App. Div. 1956); Schneider v. New Amsterdam Cas. Co., 22 N.J. Super. 238 (App. Div. 1952). See, also, Ruter v. Northwestern Fire and Marine Ins. Co., 72 N.J. Super. 467, 471 (App. Div. 1962), certification denied 37 N.J. 229 (1962). When the policy of insurance is clear and unambiguous, the court is bound to enforce the contract as it finds it. James v. Federal Insurance Co., 5 N.J. 21, 24 (1950).
Our Supreme Court, in treating with a comprehensive personal liability policy in Bauman v. Royal Indemn. Co., 36 N.J. 12, 21 (1961), said:
*53 "* * * The designation was a very broad one and while the company had the undoubted right to exclude particular types of personal liability from the so-called comprehensive coverage, its responsibility was to do so unequivocally. Cf. Mohawk Valley Fuel Co. v. Home Indemnity Company, 8 Misc.2d 445, 165 N.Y.S.2d 357, 363 (Sup. Ct. 1957). In all fairness to the ordinary layman who is the average insured, an exclusion clause should be so prominently placed and so clearly phrased that `he who runs can read.' See Lord St. Leonard in Anderson v. Fitzgerald, 4 H.L.C. 484, 510, 10 Eng. Rep. 551, 561 (1853). In recent years our courts, stressing the need for clarity and forthrightness in insurance policies (Elcar Mobile Homes, Inc. v. D.K. Baxter, Inc., 66 N.J. Super. 478 (App. Div. 1961)), have repeatedly adopted liberal constructions of policy provisions which were obscure, ambiguous or uncertain."
Where the intention of the parties is not clearly ascertainable from the policy itself, the courts will take into consideration the apparent object or purpose of the insurance and, along with the context of the policy, the subject matter of the insurance, the situation of the parties, and the circumstances surrounding the making of the contract. 13 Appleman, Insurance Law and Practice, § 7383, p. 14 (1943); Boswell v. Travelers Indemnity Co., supra, 38 N.J. Super., at p. 605.
The insurance policy in the case at bar contains no express limitation of liability to the premises designated in the policy as the "address" of the insured and as the location of "all premises owned," etc., by the insured. Nor does it confine the defendant's liability to such "hazards" or "operations" as are specified in the Declarations Schedule. In fact, as we have observed, the implication from the premium and auditing provisions of the policy is the other way.
It consequently follows that the principles of construction of insurance policies exemplified by the cases we have cited above compel the conclusion that the after-acquired property here involved is covered by the comprehensive liability provisions of this policy, provided the property in question was that of the partnership insured at the time the policy issued.

*54 III.
However, we are not satisfied that the existing proofs warrant the conclusion that the Montgomery Street property, purchased in the names of Philip Kook and Lionel Kronberg, individually, was in truth acquired for the partnership and regarded by it as an asset of the firm. This fact is material to liability since the insured here clearly was the partnership, not the individual partners. See Malanga v. Manufacturers Cas. Ins. Co., 28 N.J. 220, 223 (1958). Defendant's liability would therefore extend only to partnership property. Plaintiffs' argument that the partnership designation in the policy was merely a "trade name" of the individuals, jointly, is not persuasive. The trial court found that plaintiffs conducted a partnership at the Grand Street address, and plaintiffs do not assail that finding of fact.
On the issue of identity of ownership of the apartment house, we have only the word of an interested partner that the property was purchased with partnership funds. We know nothing about the terms of the partnership or the real estate purchase agreement; no books, records, settlement statement, documents, income tax returns or other corroborative evidence of any kind was produced.
Plaintiffs are not completely sheltered in their position by reliance upon the Uniform Partnership Act, R.S. 42:1-8(2), which provides: "Unless the contrary intention appears, property acquired with partnership funds is partnership property." The evidence, meager as it is, and the reasonable inferences to be drawn therefrom amply demonstrate a "contrary intention" sufficient to neutralize the rebuttable presumption in favor of the partnership and to shift to plaintiffs the burden of going forward with their proofs to establish the fact that this was a partnership asset.
This partnership conducted a plumbing business. The acquisition of a multiple dwelling unit is not ordinarily associated with a plumbing business; taking title in the names of the individual partners suggests the possibility that even if *55 the moneys were advanced by the partnership, they may have been charged to the separate capital accounts of the respective partners, the property purchased then becoming individually owned. Plaintiffs admitted that they made unsuccessful efforts to obtain liability insurance for the premises in question other than from defendant (but when does not appear), but they did not indicate that in so doing they were acting for the partnership. The nonproduction of any evidence to substantiate the use or treatment of the property as a partnership asset may raise an inference that if plaintiffs had produced the pertinent records in their possession, it would have been to their disadvantage. Note, Dein-Bacher, Inc. v. United States Fidelity and Guaranty Co., 115 N.J. Eq. 205, 206 (E. & A. 1934).
The afore-quoted provision of our Partnership Act was discussed in Fortugno v. Hudson Manure Co., 51 N.J. Super. 482, 497-498 (App. Div. 1958), and reference was therein made to 1 Barrett and Seago, Partners and Partnerships, Law and Taxation, c. 3, § 3.2, pp. 174-176 (1956), for a statement as to what is or what is not partnership property, to wit:
"There have been many cases involving the question of what was and what was not partnership property. In deciding these cases the courts have almost invariably sought to ascertain the intent of the partners, be it expressed or implied, from the nature and form of the transaction. Coupled with this same line of inquiry is the question of what motivated the partners (partnership) so far as the property in question is concerned.
It may be said that when partnership funds are used to purchase property that the property so acquired is presumed to be partnership property. The fact that the title to such property is taken in the name of an individual partner or partners or in the name of a third person does not change this result. The presumption stated above is rebuttable. * * *
For real property to be partnership property it must have been purchased with partnership funds and the use thereof must be by the partnership.
In considering the subject of what is the separate property of the partners and what is partnership property we come again to the matter of the intention of the parties. This intention is to be determined from the partnership agreement, the conduct of the parties and, to a lesser extent, by the use that is made of the property. * * *" *56 See also 1 Rowley on Partnership (2d ed. 1916), § 8.2, pp. 216-219. Each case involving an issue as to whether real estate constitutes an asset of the partnership must be determined by weighing all of the pertinent facts and circumstances. Vlamis v. DeWeese, 216 Md. 384, 140 A.2d 665, 669 (Ct. App. 1958); Price v. McFee, 196 Md. 443, 77 A.2d 11, 13 (Ct. App. 1950).
One of the most important circumstances in applying the rule of R.S. 42:1-8(2), it seems to us, is the relationship of the parties involved in any given litigation. That provision, enacted as part of the Uniform Partnership Act, L. 1919, c. 212, was merely a codification of our common law relating to partnerships; the same result was reached in several cases before 1919. See Deveney v. Mahoney, 23 N.J. Eq. 247 (Ch. 1872); Partridge v. Wells, 30 N.J. Eq. 176 (Ch. 1878), affirmed per curiam sub nom. Wells v. Partridge, 31 N.J. Eq. 362 (E. & A. 1879). Since 1919 the statutory rule has been cited and applied in the following cases: Fortugno v. Hudson Manure Co., supra; Quinn v. Leidinger, 107 N.J. Eq. 188 (Ch. 1930), affirmed o.b. 110 N.J. Eq. 663 (E. & A. 1932); Bacon v. Bacon, 7 N.J. Super. 182 (App. Div. 1950), affirmed 6 N.J. 117 (1951); Stark v. Reingold, 18 N.J. 251, 267 (1955). All of those cases dealt with accountings for partnership assets; all were actions by partners inter se. The inference is patent that the statutory rule, and its common-law predecessor, speak primarily to the mutual fiduciary nature of the partnership relationship. No case has been cited to us for the invocation of the rule in such a case as here presented, i.e., where the partners qua partners assert the rule against themselves as individuals in order to bring the property within the coverage of a contract insuring only the partnership, and thereby to impose an obligation on defendant, a stranger to the partnership. While we nevertheless recognize and apply the statutory rule to these facts, it is clear that the presumption should in such a case be applied with considerable caution, since control of and access to the supporting and potentially refuting data is primarily in *57 the partners, and not in the third party, the insurance company, against whom the presumption is being aimed.
Because we entertain substantial doubt as to whether the partnership issues under discussion were adequately understood or canvassed at trial level, and this precise problem being one of first instance in our reported cases, we conclude that in the interests of justice there should be a remand for the purpose of affording plaintiffs an opportunity to submit additional proofs to meet the probative weaknesses in their case discussed hereinabove and for new findings and conclusions by the trial court pursuant to all the proofs and this opinion.
Remanded for further proceedings as specified above. No costs. We do not retain jurisdiction.