Celley, Appellant, *v.* Mutual Benefit Health and Accident Association.

Argued December 3, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

*John R. Padova,* with him *Solo, Bergman & Padova,* for appellant.

*William J. Toy,* with him *Gibbons, Eustace & Obert,* for appellee.

OPINION BY SPAETH, J., June 21, 1974:

This is an appeal from an order directing a verdict in favor of appellee, Mutual Benefit Health and Accident Association, on the basis of elimination endorse-

ments in two health and accident policies issued in 1956 to appellant, Albert J. Celley.

The policies provide for an aggregate payment of five hundred dollars per month during the period the insured suffers a "total loss of time," *i.e.*, when "the insured is able to perform none of his occupational duties, [and] receives no pay for performing work or service of any kind . . . ." In each policy there is an elimination endorsement that reads: "This policy is issued on the condition that benefits shall not accrue for disability resulting from eye trouble."[1] The endorsements were included because in 1945 appellant had suffered a retinal detachment, which, although initially corrected by surgery, had eventually resulted in the loss of sight in the right eye.

On March 8, 1964, appellant, while in Europe as manager of Duke Ellington's orchestra, slipped on ice and struck his head on a pole. His nose was broken and hemorrhaging occurred in his left eye, which led to the loss of sight in the left eye. Thus blind, appellant was unable to continue with the orchestra, and has done no other work. He made a timely claim for benefits under the policies. When appellee refused coverage on the ground that appellant's disability was due to "eye trouble,"[2] appellant filed suit on the policies. Appellee moved for summary judgment but the motion was denied and the case brought to trial on September 27, 1972.

---

[1] Through mutual mistake "ear trouble" originally appeared in one of the policies. To correct this error an action to reform the policy was filed in the United States District Court for the Eastern District of Pennsylvania. Pursuant to a stipulation of counsel and with the approval of the court, the endorsement was reformed to read "eye trouble."

[2] This was the only ground for refusal of coverage; counsel for appellee stipulated "[t]hat [appellant] accidentally lost the sight of his eye and presently and has since the date of that accident suffered total loss of time within the provision of the policy."

At the beginning of the trial, appellant's counsel sought to introduce testimony of conversations between appellant and appellee's agent, Herman Fairbanks. Counsel contended that the term "eye trouble" was ambiguous and that evidence of the conversations should be admitted to clear up the ambiguity. In an offer of proof he stated:

"That Mr. Herman Fairbanks would testify that he sold the policies of insurance in question to the plaintiff as agent of Mutual of Omaha; that he was the licensed resident agent of Mutual of Omaha at the time; that his association with the plaintiff, in terms of the sale to the plaintiff of insurance, dates back to 1948 and continued through the time that these specific policies were sold.

"And that the facts and circumstances leading up to the sale of the policies in question to Mr. Celley were as follows: That Mr. Fairbanks solicited Mr. Celley's business on behalf of Mutual of Omaha; that, as the applications reflect, Mr. Celley disclosed the fact that he had had a detached retina in the right eye, which had been successfully corrected by surgery several years before the issuance of the policies in question.

"MR. TOY: I will object to that offer from Mr. Fairbanks.

"THE COURT: Let me hear it, first.

"MR. PADOVA: —disclosing this condition to Mr. Fairbanks; that the topic of what, if anything, would be eliminated within all degree of probability by Mutual of Omaha came up during the course of these discussions, and that Mr. Celley had told him that he would not accept a policy which eliminated anything other than his right eye.

"That Mr. Fairbanks told Mr. Celley that he would submit the application for insurance to the company on that basis, and that thereafter and before the policies were actually issued, Mr. Fairbanks had conversa-

tions with representatives and employees of Mutual of Omaha regarding what, if anything, was to be eliminated, and that the company, namely Mutual of Omaha, told Mr. Fairbanks that they would accept the risk subject only to the elimination of the right eye on these policies, and that the policies were therefore issued by Mutual of Omaha on that basis and delivered by Mr. Fairbanks on behalf of Mutual of Omaha to Mr. Celley.

"And that at the time of the delivery of the two insurance policies that are the subject matter of this controversy, further discussion evolved between Mr. Fairbanks and Mr. Celley regarding the Elimination Endorsement that appeared on each of those policies, and that Mr. Fairbanks assured Mr. Celley that the words 'eye trouble' in the endorsement were only intended as eliminating any disability or difficulty resulting from the right eye, and that coverage was being afforded for any disability or injury resulting from the left eye.

"That at the time of the delivery of the two policies in question by Mr. Fairbanks to Mr. Celley, Mr. Fairbanks had another conversation with the office representatives of Mutual of Omaha and was again told that the endorsement was intended only to eliminate the right eye and not the left eye.

"And, further, that the first time that Mr. Fairbanks found out that the company had taken the position that the left eye, as well as the right eye, had been excluded by the endorsement, was after Mr. Celley suffered his accident on March 8 of 1964.

"Further, Mr. Fairbanks would testify that in his experience in writing and handling accident and health insurance similar to the policies that are involved in this case, the custom and practice in the industry regarding Elimination Endorsements is to specifically and clearly eliminate diseases by name and members of the body by name."

In response to this offer, appellee's counsel argued that the term "eye trouble" was not ambiguous, and that parol evidence concerning conversations between appellee's agent and appellant was barred by two written provisions, one in the applications appellant had signed, and the other in the policies. The provision in the applications was: "I apply to MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION for insurance to be issued in reliance upon the truth and completeness of the answers to the above questions, and agree that: (1) the Association is not bound by any statement made by or to any agent unless written herein . . . ." The provision in the policies was: "1. Entire Contract; Changes: This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the Association and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions."

The trial judge rejected appellant's offer on the ground that the term "eye trouble" was not ambiguous. As a result, appellee's agent was not called to testify and appellant was prevented from testifying as to conversations he had with the agent, although he was permitted to testify as to his understanding of the term "eye trouble."[3]

After the evidence was presented, the court directed a verdict in favor of appellee. Appellant's motion for judgment n.o.v. or a new trial was denied. This appeal followed. We reverse.

A provision of an insurance policy is ambiguous if reasonably intelligent men on considering it in the con-

---

[3] "Q. Mr. Celley, at the time that the policies were delivered, when you looked at that endorsement, what did you think it meant? A. Just covering only the right eye, not anything to do with the left eye at all."

text of the entire policy would honestly differ as to its meaning. *O'Meara v. American States Ins. Co.,* 148 Ind. App. 563, 268 N.E. 2d 109 (1971); *Patton v. Patton,* 413 Pa. 566, 198 A. 2d 578 (1964). Applying this rule, we conclude that "eye trouble" is ambiguous. It could refer to diseases or disorders of the eye arising from pathological conditions, or to damage to the eye resulting from accident or other external physical injury, or to both; further, it could refer to difficulties with one or both eyes.

The conclusion that "eye trouble" is ambiguous is reinforced by the rule that in determining whether an ambiguity exists, the court may consider "whether alternative or more precise language, if used, would have put the matter beyond reasonable question. Mazzilli v. Acc. & Cas. Ins. Co. of Winterhur, 35 N.J. 1, 170 A. 2d 800 (1961)." *Kook v. Am. Sur. Co. of N. Y.,* 88 N.J. Super. 43, 51, 210 A. 2d 633, 638 (1965). As appellant points out, instead of "eye trouble" appellee could have said "injury to or disease of either or both eyes," in which case there would be no question about what had been excluded.[4]

When a term in an insurance policy is ambiguous and the intention of the parties therefore cannot be discerned from the policy, the court may attempt to arrive at a construction that seems reasonable and in ac-

---

[4] In each policy is the following provision: "No claim for loss of time (as defined in the policy) commencing or other loss incurred after two years from the Policy Date shall be reduced or denied on the ground that *a disease or physical condition not excluded from coverage by name or specific description* effective on the date of loss had existed prior to the effective date of coverage of this policy." [Emphasis added.] This provision appears to be required by law. *See* Act of May 17, 1921, P. L. 682, art. VI, §618, added by Act of May 25, 1951, P. L. 417, §2, 40 P.S. §753(A)(2)(a), (b) (mandating identical provision with time limit of three years). Appellee would have done well to state any exclusion from coverage with the specificity required by this provision.

cord with the parties' apparent intention as revealed by extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties, and the circumstances surrounding the making of the contract. *Kook v. Am. Sur. Co. of N. Y., supra* at 53, 210 A. 2d at 639. If more than one reasonable construction exists, the construction that favors coverage must be applied. *Penn-Air Inc. v. Indemnity Ins. Co. of North America,* 439 Pa. 511, 517, 269 A. 2d 19, 22 (1970). Moreover, if the ambiguity exists as to an exception to general liability, the language must be strictly construed against the insurance company. *Frisch v. State Farm Fire & Cas. Co.,* 218 Pa. Superior Ct. 211, 214, 275 A. 2d 849, 851 (1971). However, where an ambiguity can be removed by an interpretation placed upon the language by the parties, this approach does not apply. 1 Anderson, Couch on Insurance §15:83 at 825 and §15:73 at 788-89 (2d ed. 1959). Rather, the parties' interpretation will govern. *Eggleston v. Dudley,* 257 F. 2d 398 (3d Cir. 1958). *See also Am. Republic Life Ins. Co. v. Flynn,* 218 Ark. 825, 238 S.W. 2d 937 (1951). To prove the parties' interpretation, evidence of prior and contemporaneous negotiations and understandings between them is admissible. *Graybill v. Penn Township Mut. Fire Ins. Assn.,* 170 Pa. 75, 32 A. 632 (1895). This evidence is not precluded by the parol evidence rule, for it does not contradict or change the policy but merely develops and explains the ambiguity. *Foster v. McGraw,* 64 Pa. 464 (1870); 1 Anderson, *supra* §15:57 at 750-51; 3 A. Corbin, Contracts §579 at 412 (1960). It is to be noted, however, that "[t]he meaning to be discovered and applied [with the aid of parol evidence] is that which each party had reason to know would be given to the words by the other party." 3 Corbin, *supra* §579 at 418-19. Consequently, "[t]he uncommunicated subjective understanding or intent of one party to . . . [the policy] as to its meaning is not

admissible in a contest as to its interpretation or construction. Garden State Plaza Corp. v. S. S. Kresge (App. Div. 1963), certification denied 40 N.J. 226, 191 A. 2d at 63 (1963)." *Kook v. Am. Sur. Co. of New York, supra* at 48-49, 210 A. 2d at 636. Also, a statement made by one of the parties as to his understanding of ambiguous terms, even if made when the policy was being negotiated, is not material unless it was communicated to the other party. 3 Corbin, *supra*, §579 at 427. *See generally Lyons v. Cantor*, 363 Pa. 413, 70 A. 2d 285 (1950) (ambiguity in lease; tenant could not testify as to his understanding since it was not communicated to his landlord or her representative).

In applying these principles to the present case, it is important to distinguish between the conversations between appellant and appellee's agent incident, on the one hand, to the preparation and submission of the applications for the policies, and on the other hand, to the delivery of the policies.

According to the terms of the applications, appellee is not bound by statements "made by or to any agent unless written herein." Although in each application a question about "all disorders, operations, and injuries" is answered by a reference to "Detached Retina right eye," nowhere in either application is there a statement that appellant was seeking coverage that would include problems with his left eye, or that the agent had said that appellee would offer such coverage. Given this fact, the agent's statements to appellant incident to the preparation and submission of the applications, as appellant's counsel offered to prove those statements, did not bind appellee. It may be assumed that the conversations made the agent aware of appellant's desires as to coverage. This knowledge, however, cannot be imputed to appellee so as to estop it "unless such knowledge was brought to the attention of the company and acquiesced in by the company or its autho-

rized officers. Matovich v. Mutual Benefit Health and Accident Association, 157 Pa. Superior Ct. 604, 43 A. 2d 648 (1945)." *Crawford v. Manhattan Life Ins. Co.,* 208 Pa. Superior Ct. 150, 163, 221 A. 2d 877, 885 (1966). As we read the offer of proof, appellant does not allege knowledge and acquiescence by officers of appellee authorized to act on its behalf.[5]

The conversations incident to the delivery of the policies stand on a different footing. These conversations are within the rules that have been stated above, and testimony regarding them should have been admitted as evidence of negotiations showing the parties' interpretation of the ambiguous term "eye trouble."[6] To permit evidence of the interpretation would not have been in violation of the "entire contract" provision in the policies, cited to the trial judge by appellee's counsel, for the conversations were not intended to "change" the policies or to "waive" any of their provisions, nor did the conversations have such an effect, as they did not vary but rather explained the policies. As stated in *Bayer v. Lutheran Mut. Life Ins. Co.,* 184 Neb. 826, 830, 172 N.W. 2d 400, 402-03 (1969): "An insured has no

[5] The offer is not, however, entirely clear. Although stating that the agent "had conversations with representatives and employees of Mutual of Omaha," see pp. 479-480, *supra,* the offer does not state who those persons were or what was their authority to bind appellee. Since the case must be remanded, appellant's counsel will have an opportunity to restate the offer, if he believes he can prove knowledge and acquiescence by officers of appellee authorized to act on its behalf.

[6] One qualification should be noted. It will be recalled that a statement of understanding uncommunicated to the other party will be inadmissible. *Kook v. Am. Sur. Co. of New York, supra; Lyons v. Cantor, supra.* Although when fairly read the offer of proof alleges communication ("conversation with the office representatives" of appellee), see page 480, *supra,* the authority of those representatives to receive the communication should have been more expressly stated. *Cf.* footnote 5, *supra.*

right to rely upon an agent's patently absurd interpretation of a policy. He ordinarily may rightfully rely, however, upon an agent's interpretation that is plausible and not in patent conflict with the printed policy although legally untenable. Mutual Ben. Life Ins. Co. of Newark, N. J. v. Bailey, 55 Del. 215, 190 A. 2d 757 (1963)." Here the agent's interpretation was a plausible one. "It is well recognized that where an insurer's agent interprets a policy for the insured, and undertakes to inform the insured as to what constitutes coverage under it, then such interpretation as is placed upon the policy by the agent shall bind the company. Stivers v. National American Insurance Co., 9 Cir., 287 F. 2d 921." *De John v. Am. Estate Life Ins. Co.,* 489 P. 2d 1065, 1066 (Colo. 1971).

The order of the court below is vacated and the case remanded for a new trial.

WRIGHT, P. J., and SPAULDING, J., took no part in the consideration or decision of this case.

---

CONCURRING OPINION BY HOFFMAN, J.:

While I agree with the Majority that the lower court erred in directing a verdict in favor of the insurer, Mutual Benefit Health and Accident Association, I cannot join in the technical gymnastics employed in declaring that the "interpretation" of policy terms may be admitted into evidence despite express provisions in the disputed policies to the contrary.

It is certainly true that where an insurance policy is ambiguous and not patently clear ". . . parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." *In re Herr Estate,* 400 Pa. 90, 94, 161 A. 2d 32 (1960). See also *Leebov v. United States Fidelity and Guaranty Co.,* 401 Pa. 477, 165 A. 2d 82 (1960). In the instant case, the appellant sought to

introduce the testimony of an insurance agent, who procured the contract on behalf of the appellee. His testimony was offered to corroborate the circumstances of the execution and agreement with respect to this elimination endorsement, i.e., that both the appellant and the agent understood the exclusion to pertain to the condition in the *right* eye, and any direct or indirect effect therefrom.

The appellee points out that the resident agent, Mr. Fairbanks, could not bind the company by any statements or knowledge not made expressly known to the company. Each application, in the instant case, provides over the signature of the insured, as follows: "I apply to MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION for insurance to be issued in reliance upon the truth and completeness of the answers to the above questions, and agree that: (1) the Association is not bound by any statement made by or to any agent unless written herein . . . ." The policy contained a similar integration clause, expressly stating that the agent could not act to modify the policy terms.

While it may be said as a general proposition that knowledge of a fact by the agent is deemed knowledge by the principal, so that enforcement of a contract in a manner contrary to that understanding is tantamount to fraud, *International Milling Co. v. Hachmeister, Inc.*, 380 Pa. 407, 110 A. 2d 186 (1955); Restatement of Agency 2d, §9(3); Corbin on Contracts, Section 579; the law is clear that absent authority from the principal the agent may not act beyond the scope of his authority. The appellant argues the principle of apparent authority and concomitantly the doctrine of estoppel. While a justifiable reliance on the acts of an authorized agent may estop the principal from denying apparent authority, Restatement of Agency 2d, §8; 2A C.J.S. §157, an express provision notifying the third person that only written agreements or representations

ratified or acquiesced to by the principal shall bind it, is enforceable. As we said in *Crawford v. Manhattan Life Insurance Co.*, 208 Pa. Superior Ct. 150, 163, 221 A. 2d 877 (1968): "Under such circumstances [where the application provides that the company will be bound only if the promises or statements made by the agent are incorporated in writing] our courts have held that the knowledge of a soliciting agent who has no power to bind the company will not estop the company, unless such knowledge was brought to the attention of the company and acquiesced in by the company or its authorized officers. *Matovich v. Mutual Benefit Health and Accident Association*, 157 Pa. Superior Ct. 604, 43 A. 2d 648 (1945)."

We believe the court properly refused the appellant's offer of proof of the testimony of Mr. Fairbanks. While the testimony may have added in the clarification of the ambiguity, the express provisions in the application and policies prohibited such remarks from prejudicing the company at trial.

The case should be submitted to the jury for its determination. Because of the ambiguity of the words in question, the jury should be instructed that it must resolve the question of coverage by construing the words "eye trouble" in favor of the insured, and that having done that, determine if the traumatic injury to appellant's left eye resulting in blindness was a condition independent of appellant's prior condition in his right eye. The question of extent of liability is a step beyond the threshold issue of coverage, and may only be reached on the evidence presented after an initial determination that appellant's disability falls under the terms of his policies.