## Jefferson Insurance Company of New York
## v. Cook

Before Dalessandro and Toole, *JJ.*

*Edward L. McCandless, Jr.*, for plaintiff.
*Thomas F. Toole*, for Cooks.
*John J. Byrne*, for Loan Company.

*Joseph A. Murphy*, for General Accident Insurance Group.

*Charles A. Shaffer*, for Mount Vernon Fire Insurance Co.

TOOLE, *J.*, February 12, 1979—We are requested in this case to determine which of several insurance companies is obliged to afford coverage and defense in a civil action initiated by Lester Cook and Rita Cook (hereinafter referred to as Cooks) against B.A.C. Consumer Discount Company (hereinafter referred to as B.A.C.).

Lester Cook (hereinafter referred to as Cook) secured a loan from B.A.C. on July 9, 1975. Sometime in October of 1975, Cook furnished an alleged "undated check" to Carmen Ferdinand (hereinafter referred to as Ferdinand), the collection manager of B.A.C., with the understanding that the check was to remain undated and unnegotiated until and unless authorized. Ferdinand, allegedly without authorization, inserted the date October 30, 1975, upon the check and presented it for payment. The check was dishonored and returned because of lack of sufficient funds.

On January 8, 1976, Ferdinand swore to an affidavit charging Cook with issuing a bad check in violation of section 4105 of the Crimes Code,* and based upon the affidavit, the magistrate, on that same date, issued a warrant of arrest.

On January 9, 1976, Cook was arrested pursuant to the warrant of arrest issued the day before. A hearing was held before the magistrate on January 26, 1976, at which time Cook was convicted of issuing a bad check in violation of section 4105.

*18 C.P.S.A. §4105.

On February 10, 1976, Cook filed an appeal to the Court of Common Pleas of Luzerne County (No. 244 of 1976). On March 11, 1976, the appeal was heard and sustained by the court, which then dismissed the charges.

The Cooks thereafter filed a three count complaint in trespass (to no. 6365 of 1976) against B.A.C. on the theory of both malicious prosecution and intentional infliction of emotional distress.

During the time interval involved in the above recited facts, B.A.C. was insured with coverage for the offense of malicious prosecution under two different policies of insurance. From January 1, 1976, to 12:01 a.m., January 9, 1976, the insurer was Mount Vernon Insurance Company (hereinafter referred to as Mount Vernon). From 12:01 a.m., January 9, 1976, to January 1, 1977, the insurer was Jefferson Insurance Company of New York (hereinafter referred to as Jefferson).

We are now asked by petition for declaratory judgment to determine who was obligated to provide coverage and defense to B.A.C. in the suit filed against it by the Cooks.

In this case, the provisions of the insuring policies are identical and provide:

"I. COVERAGE P—PERSONAL INJURY LIABILITY

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called 'personal injury') sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

"Group A—false arrest, detention or imprisonment, or malicious prosecution;

"Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured;

"Group C—wrongful entry or eviction, or other invasion of the right of private occupancy;

"If such offense is committed during the policy period within the United States of America, its territories or possessions, or Canada, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

We note that coverage in both policies is limited to damages which the insured becomes "legally obligated" to pay arising out of the "offense" of "malicious prosecution." Neither policy defines what is meant by the word "offense" or the words "malicious prosecution" or "legally obligated." We must therefore interpret the meaning and scope of the provisions to determine whether either, neither or both insurers have a legal responsibility in this matter.

The tort of malicious prosecution can arise out of

a civil or criminal proceeding and deals with the wrongful institution of process: 23 P.L.E., §1 et seq., 282.

The tort of malicious prosecution arising out of criminal proceedings is defined in section 653 of the Restatement, 2d, Torts,: "A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if: (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and (b) the proceedings have terminated in favor of the accused."

We also note that a cause of action for malicious prosecution does not arise or is not complete in Pennsylvania until all of the essential elements have occurred including the favorable determination of the prior proceeding: Smoker v. Ohl, 335 Pa. 270, 272, 6 A. 2d 810 (1939).

Both Mount Vernon and Jefferson deny coverage in this case. Mount Vernon recognizes the fact that the affidavit of probable cause (complaint) and warrant of arrest were issued while its policy was in effect on January 8, 1976. However, Mount Vernon denies liability on the basis that the cause of action for malicious prosecution did not arise until March 11, 1976, when the appeal was sustained and the criminal charge was dismissed. Since this termination was an indispensable element of the cause of action and it did not occur within the policy period, Mount Vernon concludes that it is not "legally obligated" to afford coverage in this matter and points to Jefferson. Jefferson, on the other hand, contends that since the complaint and warrant were issued prior to the date it became the insurer for B.A.C., it cannot be responsible for acts antedating its policy.

The policies in the instant case are to be interpreted and construed in accordance with the plain meaning of their language and consistent with the underlying intentions and expectations of the parties: Slate Construction Co. v. Bituminous Casualty Corp., 228 Pa. Superior Ct. 1, 323 A. 2d 141 (1974). It is also clear that if more than one reasonable construction exists, the construction that favors coverage must be applied: Penn-Air, Inc. v. Indemnity Ins. Co. of North America, 439 Pa. 511, 517, 269 A. 2d 19, 22 (1970).

As the court noted in Celley v. Mutual Benefit Health and Accident Assoc., 229 Pa. Superior Ct. 475, 482, 324 A. 2d 430 (1974):

"When a term in an insurance policy is ambiguous and the intention of the parties therefore cannot be discerned from the policy, the court may attempt to arrive at a construction that seems reasonable and in accord with the parties' apparent intention as revealed by extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties, and the circumstances surrounding the making of the contract: Kook v. Am. Sur. Co. of N.Y., supra, at 53, 210 A. 2d at 639."

Considering the legal principles applicable to the tort of malicious prosecution, the policies involved in this case are subject to a number of interpretations and meanings:

1. If we construe "offense" as synonymous with "cause of action," we would have to conclude that neither insurance carrier is obliged in this matter since all of the elements of the cause of action did not completely occur within the policy period covered by either Mount Vernon or Jefferson.

2. If we construe "offense" to mean the date on which criminal proceedings were initiated, we

would find Mount Vernon as the responsible insurer since the complaint and warrant were issued during its policy period, and Jefferson would have no obligation.

3. If "offense" means the date on which the legal cause of action is complete, that is, the date of favorable termination of the prior proceedings, then the responsible carrier would be Jefferson and there would be no liability on the part of Mount Vernon.

4. If "offense" means either the initiation of the proceedings or the termination of the proceedings, or a combination of both, then there is the possibility of dual coverage.

Jefferson directs our attention to Muller Fuel Oil Co. v. Insurance Company of North America, 95 N.J. Super. 564, 577, 579, 232 A. 2d 168, 175 (1967), as authority for the position that the critical date is the date on which the complaint and warrant were issued and not the date the proceedings were terminated. In Muller, the insurance policy was issued subsequent to the date a criminal complaint was filed, but prior to the date when the action was terminated by acquittal of the accused. Thus the policy was issued on December 1, 1962, while the malicious prosecution arose by virtue of a criminal complaint filed on December 13, 1961, against an individual who was not acquitted until March 7, 1963. The court, in Muller, pertinently stated:

"Thus, the 'occurrence' which creates the legal obligation to pay damages precedes the commencement of the policy period, albeit the institution of suit may be delayed, as here, until favorable termination of the criminal proceeding. It would be

unreasonable to hold under those circumstances, and without more, that the insurance company intended to insure against a malicious prosecution suit, instituted subsequent to issuance of the policy, when four of the five essential ingredients of such an action preceded purchase of the policy—and those four constituted the 'essence' of the tort. To hold that coverage existed in such a case would mean that such a tortfeasor could purchase coverage a day before the injured person was acquitted in the criminal proceeding and thus shift the burden of damages to an unwary insurance company. *Insurance against loss from a malicious prosecution claim does not ordinarily apply when all of the tortious conduct and injury to the victim precede issuance of the policy and only the factor of a favorable termination of the criminal proceeding follows issuance.* (Emphasis supplied.)

" . . .

"In a claim based on malicious prosecution, the damage begins to flow from the very commencement of the tortious conduct—the making of the criminal complaint. Thus, wrong and damage are practically contemporaneous, although the passage of time can magnify the damage. The time interval for seeking a redress of the wrong malicious prosecution in the form of a suit to recover money damages is due to the need of awaiting a favorable termination of the criminal proceeding. But the tortious act and injury are a fait accompli."

Although not cited by any of the parties, our research uncovered Roess v. St. Paul Fire and Marine Ins. Co., 383 F. Supp. 1231, 1235 (M.D. Fla. 1974). In Roess, the court distinguished the Muller decision and concluded that the insurer on the date the

proceeding is favorably terminated was the responsible carrier. The Roess court stated:

". . . [I]t is the view of this Court that the Muller rule would not be embraced by the Courts of Florida. Favorable termination of the maliciously prosecuted action is an essential element of the victim's claim in tort, and the cause of action does not mature or accrue until that element has been accomplished. There is nothing in the Florida cases to indicate that one element is the 'essence' of the tort, or might otherwise be regarded as more important than another element; and neither is there any suggestion that favorable termination might be treated as a mere condition precedent to filing suit rather than an indispensable ingredient of the claim itself."

It should be noted that Muller involved a malicious prosecution arising out of a criminal case, whereas the Roess case originated with a civil action. The nature and extent of involvement or conduct on the part of the tortfeasor is usually more extensive where the action is civil rather than criminal.

In the instant case, neither policy expressly requires as a prerequisite for coverage that all of the elements of the cause of action of malicious prosecution occur during the policy period. Indeed a reasonable interpretation and more in line with what we consider the intentions and expectations of the parties is that the word "offense" is not synonymous with the term "cause of action." We believe the offense of malicious prosecution for coverage purposes may be complete even though for legal purposes a cause of action has not yet matured or ripened. In a malicious prosecution arising out of a

criminal prosecution, one will ordinarily find the swearing to and issuance of a complaint, the issuance of a warrant of arrest, a hearing and ultimately a termination of proceedings. If one files a complaint maliciously and without cause, it is theoretically inevitable that such a complaint will ultimately be dismissed and the proceedings terminated in favor of the accused. This termination can, in some cases, occur without any additional conduct or action on the part of the tortfeasor following the issuance of the complaint. Under such circumstances, there is no legal reason why the insurer at the time of the initiation of the action, should be excluded from the risk or coverage simply because when the inevitable termination of the proceeding occurs, a different policy is in effect.

On the other hand, if all of the essential conduct occurs prior to the issuance of a policy, there is no just reason to impose liability on an insurer simply because its policy happened to be in force or existence when the cause of action accrues by termination of the proceedings.

Our inquiry then must be to determine from the factual background of each case the nature of the conduct involved as it relates to the offense of malicious prosecution. Examination should be made to determine the nature and extent of the conduct of the tortfeasor during the respective policy periods. If substantial conduct has occurred during the policy period, and such conduct contributes to the injury sustained, it may well be that the "offense" of malicious prosecution as provided for in the policy is established for coverage purposes, even though all the essential elements of the cause of action have not occurred during that policy period.

In the instant case, legal process issued, both complaint and warrant, while the Mount Vernon policy was in effect. If the tortfeasor did nothing further regarding the complaint, it would have inevitably been terminated and his liability would have been clear. Under these circumstances, we see no reason why Mount Vernon should be relieved of liability because the termination of the proceedings occurred after its policy period.

On the other hand, it is equally clear that it was during the policy period of Jefferson that the victim was arrested and prosecuted at a magisterial hearing where he was convicted, and that subsequently there was an appeal, hearing, and ultimate dismissal of the charges. This conduct was substantial and we feel sufficient to constitute the "offense" of malicious prosecution within the coverage of Jefferson's policy.

We feel our interpretation reasonable and consistent with the intention and expectations of the parties, as well as both the spirit and letter of the Muller and Roess cases. It appears in the instant case that the essential ingredients of the cause of action occurred during both policy periods and, accordingly, we feel there should be dual coverage in this case.

We also note, as observed in Muller and Roess, that the insurance carriers are not prejudiced by our decision since they have the ability to limit the scope of coverage in cases of this nature. Certainly the insurance company controls the language and scope of its policy. If the company desires to limit coverage to situations where the elements of the cause of action all occur within the policy period, then they are free to do so and the policy should be

so written. If the companies desire to protect themselves from liability for antecedent conduct, then one simple question on its application form concerning pending litigation would serve to protect its position.

As previously noted, the complaint filed by the Cooks contains a count based on the theory of intentional infliction of emotional distress in addition to that based upon the theory of malicious prosecution. The question has been raised concerning the obligation of a carrier to defend since neither policy provides coverage for the tort of intentional infliction of emotional distress. This issue was answered by the court in Cadwallader v. New Amsterdam Casualty Company, 396 Pa. 582, 591, 152 A. 2d 484 (1959), wherein the court stated: "[T]he complaint filed . . . contained two separate causes of action . . . If the one for the breach . . . would constitute a claim within the scope of the policy . . . [i]t was the duty of the defendant to undertake the defense until it could confine the claim to a recovery that the policy did not cover."

Since we have already held that each company must provide coverage for the offense of malicious prosecution, it is the obligation of each insurer to defend all counts in the complaints since at least one of them comes within the policy coverage. See also Moffat v. Metropolitan Casualty Co. of New York, 238 F. Supp. 165 (D.C. Pa., 1964).

One last issue of procedure requires our attention. Mount Vernon has filed a motion for judgment on the pleadings. We find the motion improper on the basis of Pennsylvania Association of State Mental Hospital Physicians v. State Employees' Retirement Board, 31 Pa. Commonwealth Ct. 151,

414

154, 375 A. 2d 863, 864 (1977), wherein the court stated: ". . . Declaratory judgment is a statutory action, brought under the Uniform Declaratory Judgment Act, Act of June 18, 1923, P.L. 840, as amended, 12 P.S. Sec. 831 et seq. Since there is no provision in the act authorizing the entry of judgment on the pleadings, the motion is improper. [Citing cases.]."

Accordingly, we enter the following

## ORDER

And now, this February 12, 1979, at 9:00 a.m., the court orders, declares and decrees that both Mount Vernon Insurance Company and Jefferson Insurance Company of New York are directed to afford coverage and defense in a civil action initiated by Lester Cook and Rita Cook against B.A.C. Consumer Discount Company filed to no. 6365 of 1976.