**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3877
_____

BARBARA GILLIS; THOMAS GILLIS; SCOTT MCCLELLAND; KIMBERLY A.
MCCLELLAND, INDIVIDUALLY AND ON BEHALF AND ALL OTHERS
SIMILARLY SITUATED,
Appellants

v.

RESPOND POWER, LLC
_____

On Appeal from the United States District Court for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-14-cv-03856)
District Judge: Honorable Norma L. Shapiro
_____

Argued: September 15, 2016

Before: CHAGARES, GREENAWAY, JR., and RESTREPO, *Circuit Judges*.

(Filed: February 1, 2017)
_____

MICHAEL D. DONOVAN, ESQ. [Argued]
Donovan Axler, LLC
1055 Westlakes Drive
Suite 155
Berwyn, PA  19312

PATRICK HOWARD, ESQ.
Saltz, Mongeluzzi, Barrett & Bendesky
1650 Market Street
One Liberty Place, 52nd Floor

Philadelphia, PA  19103
        *Counsel for Appellants*

DAVID R. KING, ESQ. [Argued]
Herrick, Feinstein LLP
One Gateway Center
22nd Floor
Newark, NJ  07102
        *Counsel for Appellee*

_____

OPINION[*]
_____


RESTREPO, *Circuit Judge*.

Plaintiffs bring this appeal, pursuant to Rule 23(f) of the Federal Rules of Civil

Procedure, challenging the District Court's denial of their motion for class certification.

In their complaint, Plaintiffs allege that Defendant Respond Power ("Respond") charged

higher rates for its energy services than the rates it communicated to customers in

marketing pitches and in its contracts, thereby breaching its contracts with customers and

violating the implied covenant of good faith and fair dealing.  Because the District Court

based its denial of class certification on irrelevant evidence of Plaintiffs' individualized

understandings of Respond's standard form contract, we will vacate and remand.

**I**

Respond is an energy supply company, licensed by the Pennsylvania Utility

Commission.  It entered the Pennsylvania utility market in 2010.  The putative class

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

consists of approximately 50,000 customers who entered variable rate energy agreements with Respond during the proposed class period of November 2010 to June 2014. All of Respond's variable rate agreements included a uniform "Disclosure Statement," which contained the renewal terms, warranty, cancellation policy, and other provisions. Plaintiffs' claims in this case center on one specific provision of the Disclosure Statement, which addresses variable rates. The "Variable Rate" provision states, in relevant part:

> For their services, Respond adds a profit margin to the electricity and Respond Power's goal each and every month is to deliver your power at a price that is less than what you would have paid had your [sic] purchased your power from your local utility company, however, due to market fluctuations and conditions, Respond Power cannot always guarantee that every month you will see savings. Commodity charges exclude Pennsylvania sales tax, if applicable. You may contact Respond Power for our current Variable Rate.

JA115.

Plaintiffs allege that Respond promised customers in its marketing campaigns that customers would save on their monthly electricity bills if they switched from their local utility company to Respond for their electricity supply. Respond's advertising did not explain that depending on how the variable rate changed over time, Respond might charge customers *more* than they would have been charged by their local utility companies.

Barbara and Thomas Gillis, and Scott and Kimberly McClelland, the named Plaintiffs in this action, entered variable rate agreements with Respond in 2013, and

3

ultimately paid more for their electricity than they would have if they had remained with their local providers.

## II

In May 2014, the named Plaintiffs filed their original complaint against Respond in the Philadelphia Court of Common Pleas, on behalf of all Pennsylvania residents who entered into Respond's uniform variable rate agreements for electricity service in Pennsylvania during the class period. After Respond removed the case to federal court, Plaintiffs filed an Amended Complaint, and Respond moved to dismiss or strike the class allegations. The District Court denied the motion without prejudice and ordered Plaintiffs to file a motion for class certification within twenty days. On Plaintiffs' motion for extension of time, the District Court granted the parties two additional months to conduct class discovery and file for class certification.

After class discovery, Plaintiffs moved to certify the class as to their claims for declaratory judgment and breach of contract/breach of the implied covenant of good faith and fair dealing.[1] The District Court held oral argument on the motion, and it denied class certification in August 2015. Plaintiffs timely petitioned for leave to file an interlocutory appeal, which this Court granted in November 2015.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(d) and § 1446. We have jurisdiction pursuant to 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f). "We review a class certification order for abuse of discretion, which

---

[1] Plaintiffs did not seek certification as to their claims for negligent misrepresentation and for violations of Pennsylvania's consumer protection laws.

4

occurs if the district court's decision 'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 179 (3d Cir. 2014) (quoting *Hayes v. Wal–Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013)).  We review *de novo* whether the district court used an incorrect legal standard.  *Id.*

**III**

For a district court to certify a putative class, the court must first find that the class satisfies the four threshold requirements of Federal Rule of Civil Procedure 23(a):

> (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

Fed. R. Civ. P. 23(a).  The District Court denied Plaintiffs' motion for certification because it found the putative class lacked all of the Rule 23(a) requirements except numerosity, which was not in dispute.

Looking ahead to the merits of Plaintiffs' claims, the District Court reasoned that if it were to decide that the Variable Rate provision was ambiguous as a matter of law, it would consider extrinsic evidence of the parties' intent in order to resolve the ambiguity. Extrinsic evidence in the record revealed that the named Plaintiffs had different understandings – or no understanding at all – about whether the Variable Rate provision provided a "rate cap" for electricity services.  These different understandings, according to the District Court, exposed the named Plaintiffs to certain defenses that might not

5

apply to other class members, foreclosing a finding of typicality and adequacy.[2] Further, the District Court reasoned, because the named Plaintiffs did not share the same understanding of the Variable Rate provision, the 50,000 putative class members likely did not either. This suggested that resolving any ambiguity would require proof of each plaintiff's individual understanding, rather than proof common to the class. The need for individualized, transaction-specific proof defeated commonality.

Plaintiffs argue on appeal that under Pennsylvania law, the putative class members' individual understandings and interpretations of the Variable Rate provision have no place in the District Court's contract construction in this case, and thus should not have factored into the class certification analysis. We agree.

It is certainly true under Pennsylvania contract law that if the District Court were to conclude as a matter of law, at the appropriate point in the litigation, that the Variable Rate provision was ambiguous, the Court could consult extrinsic evidence to ascertain the mutual intent of the parties and resolve the ambiguity. *See Northbrook Ins. Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir. 1982) (citing *Celley v. Mut. Benefit Health & Accident Ass'n*, 324 A.2d 430, 434 (Pa. Super. Ct. 1974)) (explaining that when a contract term is ambiguous, the court may "attempt to arrive at a construction that seems reasonable and in accord with the parties' apparent intention as revealed by extrinsic evidence"). Relevant extrinsic evidence would include that which shows "the purpose of the [contract], its subject matter, the situation of the parties, . . . the circumstances

_____

[2] The District Court did not specify which defenses could be implicated, nor did it offer any examples of potential defenses.

6

surrounding the making of the contract," and the negotiation process (if there was any negotiation). *Id.*; *see also* Restatement (Second) of Contracts § 2 cmt. b (Am. Law Inst. 1981). However, to the extent that extrinsic evidence reflected only "[t]he uncommunicated subjective understanding or intent of one party" about the meaning of ambiguous contract language, such evidence would be irrelevant, since the court's objective is to discover the meaning "that . . . each party *had reason to know* would be given to the words by the other party." *Celley*, 324 A.2d at 435 (emphasis added). In other words, extrinsic evidence of one party's undisclosed, subjective understanding, intent, or opinion about the meaning of ambiguous contract language cannot be used to substantiate a particular interpretation of that language.

In the context of standard form contracts, like the Disclosure Statement, extrinsic evidence of individual understandings is especially irrelevant. Individual signatories to such contracts understand that they have no bargaining power as to specific terms, and they expect to be treated like all other signatories to the form document. *See Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 235 (3d Cir. 2012) (noting that a standard form contract, also called a contract of adhesion, is a "contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms." (quoting *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1190 (Pa. 2010))). Logically, then, standard form contracts should be interpreted uniformly as to all similarly situated signatories whenever it is reasonable to

do so, rendering individual, transaction-specific interpretations inapposite.[3] *See Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 440-41 (1st Cir. 2013) (lead opinion of equally divided en banc court); Restatement (Second) of Contracts § 211(2) & cmt. e (Am. Law. Inst. 1981).

Because form contracts should be interpreted uniformly as to all signatories, Pennsylvania and federal courts have recognized that claims involving the interpretation of standard form contracts are particularly well-suited for class treatment. *See, e.g.*, *Kolbe*, 738 F.3d at 441 (1st Cir. 2013) (listing federal courts that have "certified classes for contract disputes over form contracts because the form contracts are interpreted uniformly across members of the class, and . . . the outcome does not depend on extrinsic evidence that would be different for each putative class member"); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) (denying certification due to variation in material terms across plaintiffs' contracts, but noting that "[i]t is the form contract, executed under like conditions by all class members, that best facilitates class treatment"); *Janicik v. Prudential Ins. Co. of Am.*, 451 A.2d 451, 457 (Pa. Super. Ct. 1982) ("Claims arising from interpretations of a form contract generally give rise to common questions."). In *Janicik*, the Pennsylvania Superior Court held that certification of the class was appropriate while also noting that there were "two reasonable interpretations of the contract language in dispute." *Janicik*, 451 A.2d at 458.

---

[3] As noted in the comments to the Restatement (Second) of Contracts § 211, in the context of public utilities, legal prohibitions on discrimination among customers provide additional support for treating alike all individuals who assent to standard contract terms.

Here, the District Court did not suggest in its opinion, and Respond did not suggest in its briefing, that Plaintiffs' interpretations of the Variable Rate provision were anything more than their own subjective understandings. The excerpts of Plaintiffs' deposition testimony included in the record likewise do not suggest that Plaintiffs ever communicated their understandings to Respond. So, at bottom, we fail to see how extrinsic evidence of these Plaintiffs' subjective understandings might become relevant to the contract claims at issue, even if the District Court were to conclude that the Variable Rate provision was ambiguous.

Because this irrelevant evidence factored heavily into the District Court's denial of class certification, we cannot conclude at this juncture that the District Court properly exercised its discretion in denying certification.[4] Accordingly, we will vacate the District Court order and remand for reconsideration of Plaintiffs' motion.[5]

**IV**

---

[4] It is unclear from the District Court's opinion, particularly its truncated discussion of the evidence presented, whether it would have certified the class but for the problem it foresaw with the extrinsic evidence discussed above.

[5] In their briefs and at oral argument, Plaintiffs requested that we independently review the record, reverse the District Court's order, and certify the class. For many of the same reasons outlined in *Byrd v. Aaron's Inc.*, 784 F.3d 154, 171-72 (3d Cir. 2015), *as amended* (Apr. 28, 2015), we decline to "go beyond the scope of the District Court's opinion" here. 784 F.3d at 172.

For the reasons set forth above, we will vacate the District Court's order denying class certification and remand for further proceedings consistent with this opinion.